[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Greene Cty. Bd. of Commrs. v. O'Diam,* Slip Opinion No. 2019-Ohio-1676.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-1676

THE STATE EX REL. GREENE COUNTY BOARD OF COMMISSIONERS ET AL. *v.* O'DIAM, JUDGE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Greene Cty. Bd. of Commrs. v. O'Diam,* Slip Opinion No. 2019-Ohio-1676.]

*Prohibition—Writ sought to prevent probate-court judge from enforcing orders concerning control of courtroom currently under the control of general division of common pleas court—Judge does not have inherent authority to issue order allowing him to take control of courthouse space that is already under the control of another judge—Writ granted with qualification.*

(No. 2018-0399—Submitted February 19, 2019—Decided May 7, 2019.)

IN PROHIBITION.

————————————————

**Per Curiam.**

{¶ 1} In this original action, relators, the Greene County Board of Commissioners ("the board") and Greene County, seek a writ prohibiting a

common-pleas-court judge from enforcing his orders concerning the control of Courtroom 3 in the Greene County Courthouse. Courtroom 3 is currently under the control of the General Division of the Greene County Court of Common Pleas. But Judge Thomas O'Diam of the probate division of the Greene County Court of Common Pleas has ordered the board to designate the room as the probate division's courtroom and to provide the probate division exclusive use of the room three days a week. In a related case currently pending before us, case No. 2018-0447, Judge O'Diam seeks a writ of mandamus to enforce his orders.

{¶ 2} Judge O'Diam has filed a motion to dismiss this case. Also, the Ohio Association of Probate Judges has filed a motion for leave to file an amicus curiae memorandum in support of Judge O'Diam's motion to dismiss, and the two judges of the general division of the Greene County Court of Common Pleas have filed a motion to intervene as relators.

**BACKGROUND**

{¶ 3} Judge O'Diam engaged in a year-long effort to persuade the board and the general-division judges that the probate division needs a full-sized courtroom dedicated to its proceedings. That effort was not successful, and on March 5, 2018, Judge O'Diam issued an order setting forth the following mandates:

1. The Greene County Board of Commissioners shall immediately, by appropriate resolution, designate Courtroom 3 as the permanent Probate Court courtroom on the terms described on Exhibit A attached to this Judgment Entry and Order [the principal term being exclusive probate-court control three days a week], without any modification, conditions or stipulations of any kind.

2. The Greene County Board of Commissioners shall pass the resolution making this designation in full compliance with this

Judgment Entry and Order at the Board's next regularly scheduled meeting on March 8, 2018.

3. The Greene County Board of Commissioners shall further pay directly from the County's General Fund pursuant to statute, or reimburse this Court for, its reasonable and necessary legal fees and expenses arising out of, occasioned by, or directly or indirectly relating to this Judgment Entry and Order, and any subsequent mandamus action or similar proceeding this Court may institute against the Board because of the Board's failure or refusal to comply with this Judgment Entry and Order.

**{¶ 4}** In response, on March 6, 2018, the general-division judges entered an order that expressed their intent "to maintain sole and exclusive management of the lower area of the Greene County Courthouse [which is where Courtroom 3 is located] for use by the General Division and benefit of other agencies."

**{¶ 5}** The board met on March 8 and considered the two conflicting orders. After an executive session, they passed Resolution No. 18-3-8-26, which directed the county administrator to construct office space and a courtroom for the probate division, paid for from the county's general fund, in the lower level of the Juvenile Justice Center building.

**{¶ 6}** On March 13, 2018, Judge O'Diam issued an order declaring the board's March 8 resolution void, ordering that the resolution be rescinded, and enjoining the board from taking any action in furtherance of it.

**{¶ 7}** The board and the county then filed the instant action, seeking a writ of prohibition preventing Judge O'Diam from enforcing his March 5 and 13 orders and prohibiting him from issuing further orders in the matter. As mentioned previously herein, Judge O'Diam has filed a motion to dismiss.

## ANALYSIS

### The motion for leave to file an amicus curiae memorandum

{¶ 8} The Ohio Association of Probate Judges seeks leave to file an amicus curiae memorandum in support of Judge O'Diam's motion to dismiss and has filed a proposed memorandum. Although S.Ct.Prac.R. 16.06 authorizes the filing of amicus *briefs* without leave of court, that authorization does not extend to "memoranda before an alternative writ is granted." *State ex rel. Duke Energy Ohio, Inc. v. Hamilton Cty. Court of Common Pleas*, 126 Ohio St.3d 41, 2010-Ohio-2450, 930 N.E.2d 299, ¶ 11. Thus, it was proper for the probate-judges' association to seek leave. The motion is unopposed, and we hereby grant it.

### The motion to intervene

{¶ 9} The general-division judges filed a motion to intervene as relators in this case, along with a proposed complaint. Judge O'Diam filed a memorandum opposing intervention, asserting that the general-division judges' motion was untimely and that the board adequately represents the interest of the general-division judges as relators in this prohibition case.

{¶ 10} Civ.R. 24(A)(2) provides that upon "timely application," anyone shall be permitted to intervene in a cause of action, "when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." And Civ.R. 24(B)(2) allows a court to permit an applicant's intervention based on a showing that the applicant's claim or defense has a question of law or fact in common with the "main action." In exercising its discretion, the court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

**{¶ 11}** Although the general-division judges incontestably possess an interest in preventing the enforcement of Judge O'Diam's orders, and although obtaining a writ of prohibition would help them retain control of Courtroom 3, Judge O'Diam's mandamus case (Supreme Court case No. 2018-0447, in which the general-division judges also seek to intervene) provides the opportunity for them to assert both jurisdictional and substantive defenses against the enforcement of Judge O'Diam's orders. Moreover, for purposes of asserting that Judge O'Diam lacked jurisdiction to issue his orders, relators adequately represent the general-division judges' interest.

**{¶ 12}** The complaint and exhibits show that the board, whose resolution directs the renovation of space for the probate division in the Juvenile Justice Center building, has taken the same position as the general-division judges and is seeking to keep Judge O'Diam from enforcing his orders. Thus, relators seek the same ultimate goal as the general-division judges. *See Clarke v. Warren Cty. Commrs.*, 12th Dist. Warren No. CA2000-01-009, 2000 WL 1336684 (Sept. 18, 2000), *3, quoting *Nationwide Mut. Ins. Co. v. Clow*, 1st Dist. Hamilton No. C-910511, 1992 Ohio App. LEXIS 4957 (Sept. 30, 1992), *6 (" 'Where the party seeking to intervene has the same ultimate goal as a party already in the suit, courts have applied a presumption of adequate representation, and to overcome that presumption, applicants ordinarily must demonstrate adversity of interest, collusion or nonfeasance' ").

**{¶ 13}** Additionally, in this case, it is the board, not the general division, that could be held in contempt of Judge O'Diam's order, and the board has both the full incentive and no less capability to advance the strictly legal arguments in support of prohibition. Because relators adequately represent the interest of the general-division judges, we deny intervention of right under Civ.R. 24(A).

**{¶ 14}** We exercise our discretion to also deny permissive intervention under Civ.R. 24(B). The issues in Judge O'Diam's motion to dismiss the complaint

have been fully briefed, and granting intervention at this juncture would impose further delay because Judge O'Diam would need to be given the opportunity to respond to the intervenors' complaint. We hold that granting intervention under these circumstances would unduly delay our adjudication of this matter.

### The motion to dismiss

{¶ 15} Judge O'Diam has moved to dismiss the complaint for a writ of prohibition. "Dismissal of the prohibition complaint for failure to state a claim upon which relief can be granted is appropriate if, after presuming the truth of all factual allegations of the complaint and making all reasonable inferences in [the relator's] favor, it appears beyond doubt that he can prove no set of facts entitling him to the requested extraordinary writ of prohibition." *State ex rel. Hemsley v. Unruh*, 128 Ohio St.3d 307, 2011-Ohio-226, 943 N.E.2d 1014, ¶ 8.

{¶ 16} To demonstrate entitlement to a writ of prohibition, relators must show (1) that Judge O'Diam has exercised judicial power, (2) that his exercise of judicial power is unauthorized by law, and (3) that denying the writ would result in injury for which no other adequate remedy exists in the ordinary course of law. *See State ex rel. Richland Cty. Children Servs. v. Richland Cty. Court of Common Pleas*, 152 Ohio St.3d 421, 2017-Ohio-9160, 97 N.E.3d 429, ¶ 8. Because the first element is undisputedly met, we turn to the question whether Judge O'Diam's exercise of judicial power was unauthorized by law.

{¶ 17} Judge O'Diam relies on case law establishing that "[c]ommon pleas courts and their divisions possess inherent authority to order funding that is reasonable and necessary to the court's administration of its business." *State ex rel. Wilke v. Hamilton Cty. Bd. of Commrs.*, 90 Ohio St.3d 55, 60, 734 N.E.2d 811 (2000). In evaluating appropriations made by boards of county commissioners in those cases, the court focused on "the separation of powers among the various branches of government." *State ex rel. Johnston v. Taulbee*, 66 Ohio St.2d 417, 420, 423 N.E.2d 80 (1981).

6

{¶ 18} Judge O'Diam is correct that our case law holds that courts may issue orders to secure both adequate funding and adequate facilities in the courthouse. We have held that a court's "funding orders are presumed reasonable and [a board of county commissioners] bears the burden to rebut the presumption" when a court seeks a writ of mandamus to enforce such orders. *Wilke* at 60, 65. Similarly, we have held that a court has inherent judicial power to take control of space in a courthouse by judicial order when the space is reasonably necessary for the court's operation. *See State ex rel. Bittikofer v. Babst*, 97 Ohio St. 64, 119 N.E. 136 (1917); *Zangerle v. Cuyahoga Cty. Court of Common Pleas*, 141 Ohio St. 70, 46 N.E.2d 865 (1943); *State ex rel. Finley v. Pfeiffer*, 163 Ohio St. 149, 126 N.E.2d 57 (1955).

{¶ 19} The complaint contends that Judge O'Diam lacked jurisdiction to issue orders requiring the board to designate Courtroom 3 as the probate-division's courtroom. But contrary to the overall theory of the complaint, courts do possess inherent powers related to funding and courtroom space. Moreover, those inherent powers are enjoyed by all constitutionally recognized courts, including the probate courts. In *Finley*, we specifically held that "the Probate Court is a court of general jurisdiction" for purposes of exercising inherent judicial authority. *Id*. at 153. And although the provisions of the Ohio Constitution related to the judicial system have been amended since *Finley* was decided, those changes do not affect our rationale in *Finley*. It remains true that the probate division is "established by the Constitution"[1] and that, like any other court, it "has full authority and power to deal with all the subjects entrusted to it." *Finley* at 153. All such courts possess similar inherent powers related to funding and courtroom space.

{¶ 20} That said, and as the motion to dismiss acknowledges, "the dispute over Courtroom 3 presents for the first time competing demands of two courts." We therefore turn to relators' assertion that the case law regarding the power of a

---

[1] *See* Ohio Constitution, Article IV, Section 4(C).

judge to take control of space in a courthouse is inapposite in this case because Judge O'Diam "is not seeking to take Courtroom 3 from another officer of the County" but rather "from the General Division of the Common Pleas Court." As relators point out, "the General Division's need to exercise its judicial functions is not inferior, or secondary, to the Probate Court's similar need" and unlike the circumstances presented in the case law, the board in this case is being ordered by one judge to "disregard a simultaneous order by [other judges]."

{¶ 21} Relators are correct that the case law on this issue involves judicial orders taking control of courthouse space occupied by *administrative offices*, not by *other courts*. *Bittikofer*, 97 Ohio St. 64, 119 N.E. 136 (court order ousts the county school superintendent); *Zangerle*, 141 Ohio St. 70, 46 N.E.2d 865 (court order ousts the county auditor); *Finley*, 163 Ohio St. 149, 126 N.E.2d 57 (court order ousts the county recorder). Each case involves the exercise of power by a court over space within a courthouse, and in each case, we endorsed the exercise of judicial power on the grounds that the executive branch may not usurp judicial authority in determining the use of courthouse space. *See Bittikofer* at 66 (because the "judicial power is a separate and independent department of the government," a courthouse "naturally and necessarily comes within the control of that department; otherwise a conflict of authority might seriously impede the administration of justice"); *Zangerle* at paragraphs one, two, and three of the syllabus (because the "purpose of a courthouse * * * is to furnish the rooms and facilities essential for the proper and efficient performance of the functions of the court" and because a court "possess[es] all powers necessary to secure and safeguard the * * * exercise of [its] judicial functions and cannot be * * * impeded therein by other branches of the government," the court "may exercise control over the courthouse"); *Finley* at 154-155 (acknowledging a court's inherent power to acquire facilities for its operation but limiting the power to "the acquisition of necessary as distinguished from desirable quarters and space").

8

{¶ 22} By contrast, the relators in this case are not relying on the board's executive authority but on the order of the general-division judges. That fact distinguishes this case from prior inherent-power cases, inasmuch as Judge O'Diam cannot claim authority that supersedes that of the court's general division—any more than the general-division judges can issue orders that supersede Judge O'Diam's authority as probate judge.

{¶ 23} In reaching this conclusion, we recognize that in *Finley* we hypothesized a conflict that involved the space demands of two different courts. Moreover, we used that hypothetical to develop the doctrine of the case: the inherent power of a court to take control of courthouse space is confined to "the acquisition of the space and facilities *essential* for its proper and efficient operation," as opposed to the acquisition of merely "*desirable* quarters and space." (Emphasis added.) *Finley* at 155-156. From this reasoning, Judge O'Diam concludes that *Finley* makes clear that "the proper path" for resolving the present dispute is a mandamus action in which the court can review the conflicting court orders and determine which court has a greater need for the space it claims.

{¶ 24} We disagree with Judge O'Diam's conclusion. The conflict of court orders was merely hypothetical in *Finley*; the actual holding of the case applied the standard of reasonable necessity to a court order that claimed space from the county recorder. Although we imagined conflicting court orders in *Finley*, we did not specify as part of the hypothetical the situation that we confront here: one of the two *courts currently possesses and controls the courthouse space* at issue.

{¶ 25} We hold that a judge does not have inherent authority—and thereby lacks jurisdiction—to issue an order allowing him to take control of courthouse space when the space is already under the control of another court, or a different division of the common-pleas court. It follows that Judge O'Diam was without power to issue the March 5 and March 13, 2018 orders insofar as they require the

board to designate Courtroom 3 as the probate-division's courtroom. We therefore deny the motion to dismiss.

## Merits of the prohibition action

{¶ 26} Under S.Ct.Prac.R. 12.04(C), we now proceed to determine the merits of the case. Two undisputed facts—the general division's current control of Courtroom 3 and the existence of conflicting court orders—establish that as a matter of law, Judge O'Diam acted beyond his authority in issuing his orders requiring the board to designate Courtroom 3 as the probate-division's courtroom. Judge O'Diam's lack of jurisdiction is patent and unambiguous. And "[i]n cases of a patent and unambiguous lack of jurisdiction, the requirement of a lack of an adequate remedy of law need not be proven because the availability of alternate remedies like appeal would be immaterial." *State ex rel. State v. Lewis*, 99 Ohio St.3d 97, 2003-Ohio-2476, 789 N.E.2d 195, ¶ 18. For this reason, relators are entitled to a writ prohibiting the enforcement of Judge O'Diam's orders requiring designation of Courtroom 3 as the probate division's courtroom.

{¶ 27} But Judge O'Diam's orders not only attempt to take control of Courtroom 3, they also mandate payment of the legal fees and expenses connected with defending and enforcing his orders. Relators do not specifically contend that the judge lacked jurisdiction to make this demand. And the case law treats such an order as a funding order that is presumptively valid. *See Wilke*, 90 Ohio St.3d at 65, 734 N.E.2d 811 ("A judge has the inherent authority to order a legislative body to provide funding necessary for the efficient administration of the court, including funding private counsel to represent the court"). Of course, funding orders regarding appointed counsel for county officials need to be evaluated in conjunction with the statutes relating to the role of the county prosecuting attorney and the appointment of outside counsel. *See, e.g., State ex rel. Gains v. Maloney*, 102 Ohio St.3d 254, 2004-Ohio-2658, 809 N.E.2d 24; *State ex rel. Hillyer v. Tuscarawas Cty. Bd. of Commrs.*, 70 Ohio St.3d 94, 637 N.E.2d 311 (1994).

10

**{¶ 28}** Because Judge O'Diam's jurisdiction to order payment of legal fees and expenses has not been specifically contested in this case and because the appointment of the judge's counsel is a subject of dispute in his mandamus case (Supreme Court case No. 2018-0447), we exempt from the writ of prohibition the portion of Judge O'Diam's orders requiring the board to pay his fees and expenses relating to enforcement of the orders. We will consider the validity of Judge O'Diam's demand for payment of his private counsel and other litigation expenses when we consider the mandamus case.

## CONCLUSION

**{¶ 29}** For the foregoing reasons, we grant the motion for leave to file an amicus memorandum, deny the general-division judges' motion to intervene, and deny Judge O'Diam's motion to dismiss. We also grant a peremptory writ prohibiting Judge O'Diam from enforcing his orders entered on March 5 and March 13, 2018, in the Greene County Common Pleas Court, Probate Division, case No. 11587 MISC, captioned "In the Matter of the Designation of Courtroom 3 for Use by Greene County Common Pleas Court, Probate Division," and additionally prohibiting Judge O'Diam from entering additional orders relating to the dispute over the control of Courtroom 3. But we grant the writ of prohibition with the qualification that its issuance is without prejudice to Judge O'Diam's claim that he is entitled to have the county pay his attorney fees and litigation expenses related to defending and attempting to enforce his orders. That issue will be addressed in the mandamus case that is pending before this court in case No. 2018-0447.

Judgment accordingly.

O'CONNOR, C.J., and FRENCH, FISCHER, DEWINE, and STEWART, JJ., concur.

KENNEDY and DONNELLY, JJ., concur in part and dissent in part and would grant an alternative writ.

_____

Surdyk, Dowd & Turner Co., L.P.A., and Dawn M. Frick, for relators.

Porter, Wright, Morris & Arthur, L.L.P., Kathleen M. Trafford, and Caroline Gentry, for respondent.

John D. Smith Co., L.P.A., John D. Smith, and Andrew P. Meier, for proposed intervenors, Judge Michael A. Buckwalter and Judge Stephen A. Wolaver.

Paul W. Flowers Co., L.P.A., Paul W. Flowers, and Louis E. Grube, for amicus curiae, Ohio Association of Probate Judges.

_____