NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3503

THE STATE EX REL. O'DIAM, JUDGE *v.* GREENE COUNTY BOARD OF COMMISSIONERS ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. O'Diam v. Greene Cty. Bd. of Commrs.*, Slip Opinion No. 2020-Ohio-3503.]

*Mandamus—R.C. 309.09(A), 305.14(A), and 305.17 set forth the process through which county officials, including judges, may procure outside legal counsel—That process must be followed before procuring outside counsel at a county's expense—Writ denied.*

(No. 2018-0447—Submitted September 10, 2019—Decided July 1, 2020.)

IN MANDAMUS.

———————————

**DEWINE, J.**

{¶ 1} This is a mandamus case. A judge asks us to compel a county to pay for his outside legal counsel. But the General Assembly has passed a set of statutes prescribing a process for all county officials, including judges, to follow in

obtaining outside legal counsel. The judge did not follow the statutory process, and we have no reason to think that there is any constitutional problem with the statutory process. As a consequence, he is not entitled to compel the county to pay for his lawyer. We deny the writ of mandamus.

## FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} This is not the first time this court has weighed in on the underlying dispute, and before going further it is worth briefly recapping our prior decisions on the matter. In March 2018, Greene County Probate Judge Thomas O'Diam issued two orders that sought to take control of a courtroom, Courtroom 3, which was under the control of the General Division of the Greene County Court of Common Pleas. The orders also sought to compel the county to pay for any legal expenses "arising out of, occasioned by, or directly or indirectly relating to" the orders or any subsequent proceedings "in mandamus, contempt or otherwise" arising from the board's failure to comply with the orders.

{¶ 3} The Greene County Board of Commissioners ("board") filed a petition for a writ of prohibition attempting to stop Judge O'Diam's orders from taking effect. Shortly thereafter, Judge O'Diam filed the present mandamus action seeking to enforce his orders. We granted the writ of prohibition. *State ex rel. Greene Cty. Bd. of Commrs. v. O'Diam*, 156 Ohio St.3d 458, 2019-Ohio-1676, 129 N.E.3d 393, ¶ 26, 27 ("*O'Diam I*"). And in this case, we entered judgment on the pleadings in favor of the board as to the courtroom-control issue thereby putting an end to Judge O'Diam's attempt to take control of Courtroom 3. 155 Ohio St.3d 1442, 2019-Ohio-1721, 122 N.E.3d 204. But we did not then settle whether Judge O'Diam may force the board to pay his legal expenses. Rather, we issued an alternative writ as to the part of the mandamus action that sought to compel payment of legal expenses and required the parties to submit evidence and briefs on the issue.

*Judge O'Diam sought to improve the probate court's facilities*

{¶ 4} Why did all this litigation come about? Over time, Judge O'Diam had become concerned about deficiencies in the facilities that had been assigned to the probate court. In early 2017, he came to believe that Courtroom 3—which was in the same building as the probate court but under the control of the General Division of the Common Pleas Court—was underutilized. He thus proposed to county officials and to the general division that the probate court share usage of that courtroom. For whatever reason, the different interested parties could not resolve their disagreements over the use of Courtroom 3, and as a result, Judge O'Diam issued the two March 2018 orders that are the basis for the present litigation.

*Judge O'Diam hired private counsel without consulting the county prosecuting attorney and insisted that the county pay for counsel of his choosing*

{¶ 5} In his supporting affidavit, Judge O'Diam claims that by midsummer 2017, he had concerns that he might need outside counsel to aid him in his efforts to "secure a suitable and sufficient courtroom and related facilities." And he avers that he believed that the county prosecuting attorney had a conflict of interest that would have precluded the prosecuting attorney from adequately representing his interests. Thus, he made inquiries with five law firms regarding representation in a potential legal dispute over court facilities. (There is no indication that Judge O'Diam consulted the prosecuting attorney at this stage to obtain advice on how to handle any anticipated conflicts.)

{¶ 6} In July 2017, Judge O'Diam contacted Kathleen Trafford, an attorney with Porter, Wright, Morris & Arthur, L.L.P. Trafford discussed the courtroom-control issue with Judge O'Diam and proposed a fee structure under which Porter Wright would bill Trafford's time at $350 an hour, cocounsel's time at $300 an hour, and an associate's time at $250 an hour. Satisfied with the arrangement, Judge O'Diam selected Porter Wright to advise him, and in February 2018, Trafford sent him a formal engagement letter. That letter included the agreed-upon fee

structure and confirmed that the firm would represent Judge O'Diam in his official capacity as a judge of the Greene County Probate Court.

{¶ 7} On March 5, 2018, the same day Judge O'Diam issued his first order attempting to take control of Courtroom 3, he also sent a letter to the county prosecuting attorney and the board requesting, under R.C. 305.14(A), that they apply to the court of common pleas for approval to employ private counsel to represent him.

{¶ 8} Three days later, the board adopted a resolution to construct a new probate-court facility in the basement of the juvenile-justice-center building. Then, on March 13, Judge O'Diam issued an order purporting to invalidate the board's resolution and demanding that the board "immediately and permanently refrain from any attempt to directly or indirectly enforce, pursue or act upon" the resolution. The same day, Judge O'Diam issued a separate order in which he rescinded his March 5 request to the prosecuting attorney and the board regarding the application to employ counsel for him and sua sponte appointed Porter Wright to represent him.

{¶ 9} Despite Judge O'Diam's actions, on March 14, the prosecuting attorney and the board applied to the court of common pleas for authority to employ outside counsel for Judge O'Diam under R.C. 305.14(A). The next day, the board filed the complaint for a writ of prohibition—the subject of *O'Diam I*—against Judge O'Diam in this court.

{¶ 10} Meanwhile, the county's attempts to procure outside counsel for Judge O'Diam proceeded, and on April 2, 2018, Greene County Common Pleas Juvenile Court Judge Adolfo Tornichio authorized the board to employ counsel. The board then solicited proposals for Judge O'Diam's representation. Initially, only Porter Wright responded, but the firm declined to reduce the hourly rates that had previously been quoted to Judge O'Diam to meet the board's proposed fee structure. So the board again solicited proposals for outside representation, and it

received five bids, with top rates ranging from $165 per hour to $350 per hour. But in July 2018, Judge O'Diam informed the county that he would not participate in interviewing more firms and that Porter Wright would continue to represent him.

## ANALYSIS

{¶ 11} The question we must answer is whether Judge O'Diam is entitled to outside counsel at the county's expense when he did not use the process set forth in R.C. 309.09(A), 305.14(A), and 305.17.

{¶ 12} Judge O'Diam claims that his inherent authority as a judge entitles him to force the county to pay any legal expenses arising out of his official duties. Determining the full scope of a court's inherent authority presents a difficult question that requires working out the proper boundaries of competing principles related to both the separation of powers and the balance of powers. *See State ex rel. Johnston v. Taulbee*, 66 Ohio St.2d 417, 426, 423 N.E.2d 80 (1981) (Holmes, J., concurring in part and dissenting in part). But we need not fully wade into those deep waters here. This is so, because the inherent power of a court does not allow a judge to sidestep an otherwise constitutional statutory process. In short, the General Assembly has passed a set of statutes that provide a process through which county officials—including judges—can get legal counsel. And unless those statutes are constitutionally infirm in some way, that is something that the General Assembly had the power to do. Because there is no constitutional infirmity in the statutory scheme, officials must abide by it. Judge O'Diam did not, and hence he is not entitled to force the county to pay for his lawyer.

*Judge O'Diam did not follow the statutory process*

{¶ 13} R.C. 309.09(A), 305.14(A), and 305.17 set forth the process through which county officials, including judges, may procure outside legal counsel. R.C. 309.09(A) states that "[t]he prosecuting attorney shall be the legal advisor of * * * county officers and boards" and "shall prosecute and defend all suits and actions that any such officer [or] board * * * directs or to which it is a party." That

provision also states that "no county officer may employ any other counsel or attorney at the expense of the county, except as provided in [R.C. 305.14]." *Id.*

{¶ 14} R.C. 305.14(A), in turn, states that "[t]he court of common pleas, upon application of the prosecuting attorney and the board of county commissioners, may authorize the board to employ legal counsel to assist the prosecuting attorney." Such representation may extend to "any matter of public business coming before such board or officer" or to "the prosecution or defense of any action or proceeding in which such board or officer is a party or has an interest, in its official capacity." *Id.* Finally, R.C. 305.17 provides that the board "shall fix the compensation of all persons appointed or employed under [R.C. 305.14]."

{¶ 15} So, in broad outline, the statutory scheme sets forth the following process for county officials to procure outside representation. Normally, the county prosecuting attorney will represent any county official in any matter related to the official's public business. R.C. 309.09(A). But if the prosecuting attorney cannot adequately represent the official, the prosecuting attorney and the board should apply to the court of common pleas, which may authorize the board to employ outside counsel. R.C. 305.14(A). Upon such authorization, the board has the authority to employ and fix the compensation of that counsel. R.C. 305.17.

{¶ 16} Here, Judge O'Diam simply didn't use this process. In early March 2018, he sua sponte appointed Porter Wright to represent him. In the meantime, the board and prosecuting attorney attempted to use the statutory process. They applied to the court of common pleas and in early April, the court of common pleas authorized the employment of outside counsel. At that point, the board attempted to find outside counsel for Judge O'Diam but he refused to participate in the process and instead insisted that Porter Wright would represent him, thereby thwarting the authority of the board to employ and fix the compensation of outside counsel. So, in essence, Judge O'Diam made a de facto appointment of private counsel and then

6

insisted that the statutory process be nothing more than a rubber stamp of his decision regarding both the identity of counsel and counsel's compensation.

*A judge cannot rely on his inherent authority to avoid*

*a constitutional statutory scheme*

{¶ 17} Judge O'Diam seems to think that his inherent authority as a judge allows him to avoid the statutory process. He suggests that sidestepping the statutory process is permitted because of separation-of-powers principles. But separation of powers is only half of the equation. The other half is the balance of powers. As we are taught in elementary school, the American system of government is premised on a system of checks and balances. An important function of that system is to prevent one government entity from acting unilaterally without some form of check placed on it by other parts of the government. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 593, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (Frankfurter, J., concurring); *see also* The Federalist No. 51 at 351-352 (Cooke Ed.1961).

{¶ 18} Part of checks and balances is that different branches of government place constraints on what other branches can do. By constitutional design, the legislative branch has the authority to legislate and appropriate monies; the executive branch the duty to see that laws are faithfully executed; and the judicial branch the authority to say what the law is. *See generally* Ohio Constitution, Articles II through IV; *see also* The Federalist No. 78 at 523 (Cooke Ed.1961). The diffusion of these powers in the respective branches of government allows each branch of government to act as a check on the other two. Thus, courts have to abide by constitutionally sound statutes, and the legislative and executive branches have to abide by constitutional limits as interpreted by courts.

{¶ 19} True, this court in the past has recognized that the judicial branch has some inherent power to procure funding essential for the exercise of its functions. *State ex rel. Finley v. Pfeiffer*, 163 Ohio St. 149, 154-155, 126 N.E.2d

57 (1955). But the inherent authority of a court isn't the right to demand money from taxpayers without constraint. Indeed, we have required courts to comply with the statutory process for procuring outside counsel. *See State ex rel. Gains v. Maloney*, 102 Ohio St.3d 254, 2004-Ohio-2658, 809 N.E.2d 24, ¶ 14. It therefore is a mistake to look to the inherent authority of the courts without first assessing whether the statutory process is unconstitutional.

{¶ 20} Is there a separation-of-powers problem with the statutory scheme? We've never said there was, despite having applied the relevant statutes in other cases. *See id*. at ¶ 14. And it's hard to see how there could be. R.C. 309.09(A) makes the prosecuting attorney the legal counselor for all county officials, including judges. But it recognizes that in certain cases, the prosecuting attorney may not be able to fulfill that role, and it allows additional legal counsel to be appointed through a specified process. As noted above, that process requires the county official to ask the prosecuting attorney and the board to provide outside counsel. R.C. 305.14(A). If those parties agree, they petition the court of common pleas to approve employing outside counsel. *Id.* Upon approval, the board arranges for and pays for counsel. R.C. 305.17. There is no apparent separation-of-powers problem with a scheme that provides a process through which the needs of the court can be met but also requires coordination with other parts of the government, and the parties have not meaningfully argued that there is one.

{¶ 21} One might object that the board or prosecuting attorney could stymie the process by refusing to petition the court for approval and that presents a separation-of-powers problem. But two things are worth noting. First, that didn't happen here. Second, if the board or prosecuting attorney refuses to seek counsel for the court, the court has a remedy—it may petition for a writ of mandamus to force the board and prosecuting attorney to comply with the statutory process. *See State ex rel. Corrigan v. Seminatore*, 66 Ohio St.2d 459, 463-464, 423 N.E.2d 105 (1981). Whether a writ should issue will be determined by the reviewing court in

the mandamus action. It is puzzling how one could think that there could be a separation-of-powers issue when a court would ultimately assess the reasonableness and necessity of the request.

{¶ 22} So, nothing in the statutory process here undermines basic separation-of-powers principles. Judge O'Diam just didn't use that process. And the inherent powers of the courts do not license a judge to thwart the otherwise constitutional statutory processes for hiring counsel set forth in R.C. 309.09(A), 305.14(A), and 305.17.

{¶ 23} It is true that we have sometimes allowed a court to invoke its inherent powers to procure outside counsel, but in those cases the statutory process had broken down in some way. For instance, in *Wilke*, the board had refused to join the prosecuting attorney's application asking the court of common pleas to appoint outside counsel for the probate court. *State ex rel. Wilke v. Hamilton Cty. Bd. of Commrs.*, 90 Ohio St.3d 55, 65, 734 N.E.2d 811 (2000). Similarly, in *Hillyer*, we noted that it was the board's failure to comply with a previously granted writ that allowed a court to "bypass the normal statutory procedure." *State ex rel. Hillyer v. Tuscarawas Cty. Bd. of Commrs.*, 70 Ohio St.3d 94, 98, 637 N.E.2d 311 (1994).

{¶ 24} But here, neither the board nor the prosecuting attorney refused to ask the court of common pleas to authorize outside counsel. Rather, they were in the process of finding such counsel. And, again, the inherent authority of a court is not a free license to ignore a statutory process that satisfies constitutional requirements. Judges cannot simply demand that the taxpayers pay for their every wish without complying with the lawful processes set forth by the General Assembly.

{¶ 25} Judge O'Diam and the dissenting opinion seem to contemplate a system in which a judge demands money and the other political branches have to simply comply, regardless of what statutory scheme is in place. Reviewing courts

play a de minimis role, asking only whether the county has shown that the judge's request is unreasonable—a burden that is nearly insurmountable for almost any request.

{¶ 26} What Judge O'Diam and the dissent envision isn't a formula that respects the balance of powers. Their view of a court's inherent powers, we suspect, comes from some vague language in prior caselaw that discusses a court's inherent powers in abstract terms, without the benefit of much concrete analysis. *See, e.g., Johnston*, 66 Ohio St.2d at 421-422, 423 N.E.2d 80. But as we have explained, we need not revisit the constitutional scope of a court's inherent powers here, because before getting to the question of the scope of a court's inherent authority, one would first have to establish that the statutory scheme is unsound. And the scheme at issue here is plainly not.

{¶ 27} The dissent tries to downplay the implications of what it proposes. It insists, for instance, that it agrees with the majority of this court that a judge " 'cannot simply demand that the taxpayers pay for their every wish.' " Dissenting opinion at ¶ 51, quoting majority opinion at ¶ 24. But make no mistake. In the dissent's formulation, compliance with a constitutional statutory scheme is largely irrelevant. According to the dissent, the only time a county may require that a judge follow the statutory process is when it can demonstrate that the judge's ultimate actions are "unreasonable and unnecessary." This reasoning turns the normal order of things on its head—the presumption becomes not that the judge must follow the law, but rather that if the board would like the judge to follow the statutory process, it needs to demonstrate that what the judge wants to do is unreasonable and unnecessary. Because the unreasonable-and-unnecessary test is so deferential, the net effect would be to make established procedures for court funding mere suggestions and allow any judge to hire counsel at public expense almost anytime he disagreed with a county budgetary decision.

**{¶ 28}** The dissent's reasoning works a breathtaking expansion of our precedents. It would allow a judge to unilaterally appoint counsel for himself, *entirely outside the statutory process*, and then insist on reimbursement, subject only to the constraint that the appointment of outside counsel wasn't unreasonable and unnecessary. Our prior cases hardly support such unbridled authority. For instance, in *Wilke*, on which the dissent primarily relies, this court allowed a judge to recover expenses for outside counsel even though the board had refused to join the prosecuting attorney in applying to the court of common pleas for the appointment. 90 Ohio St.3d 55, 734 N.E.2d 811. But the judge at least attempted to use the statutory process, and importantly, the application was approved by the common pleas court. It was hardly the sort of unilateral action, subject only to the "unreasonable and unnecessary" constraint that the dissent's reasoning would seem to allow.

**{¶ 29}** In order for balance-of-powers principles to meaningfully constrain the judiciary, we cannot do as the dissent suggests and replace validly enacted statutes with an overarching as-long-as-it-is-not-unreasonable-and-unnecessary test. Judges, like everyone else, must comply with valid laws.

*The board and prosecuting attorney's alleged conflict of interest did not justify ignoring the statutory scheme*

**{¶ 30}** Judge O'Diam and the dissent attempt to justify dodging the statutory process on the ground that the prosecuting attorney had a conflict of interest at the time Judge O'Diam hired outside counsel. They base this claim on the fact that the prosecuting attorney's office uses Courtroom 3 for grand-jury proceedings, as well as the fact that the prosecuting attorney's office had provided some preliminary advice to the board about the courtroom dispute and would likely represent the board and common pleas court in any litigation. This reasoning fails to appreciate the nature of county-level decision-making.

{¶ 31} By statute, the prosecuting attorney is required to be the legal adviser to all of the county's elected officials. *See* R.C. 309.09. Though the primary interest of elected officials should be to serve the public, different officials often have different views on how to achieve that goal. Thus, disagreements and competing claims among elected officials are innate in county government. The allocation of county resources is generally a zero-sum game. When one county office receives additional funding, another county office is necessarily denied that funding. The same goes with the allocation of space. But the prosecuting attorney is still tasked with representing these officials. And competing claims by themselves do not rise to a conflict mandating the appointment of outside counsel; otherwise each county official would be entitled to unilaterally hire his or her own lawyer every time budget season rolled around.

{¶ 32} Moreover, this sort of innate competition doesn't plausibly preclude the prosecuting attorney from requesting outside counsel when necessary. Nor does it prevent the board—an entity that by its nature is tasked with weighing competing claims for money—from hiring outside counsel. So, the alleged conflict here doesn't justify ignoring the statutory process. Thus, we deny Judge O'Diam's request to require the county to pay his attorney fees.

*We deny the request for court costs*

{¶ 33} The mandamus petition also seeks court costs associated with the litigation in this case. We deny that request. As discussed, R.C. 309.09(A) directs the prosecuting attorney to handle "all suits and actions" for a county officer acting in his official capacity, absent a valid appointment of outside counsel. Because Judge O'Diam did not follow the statutory process, he cannot require the county to pay his court costs. *See State ex rel. Cuyahoga Cty. v. Jones Lang LaSalle Great Lakes Co.*, 8th Dist. Cuyahoga No. 104157, 2017-Ohio-7727, ¶ 76-81; *State ex rel. Scripps Media, Inc. v. Hunter*, 1st Dist. Hamilton No. C-130241, 2013-Ohio-5895,

12

¶ 25 (pro se motion from judge was stricken because the "right to representation was prescribed by * * * R.C. 305.14(A) and 309.09(A)").

{¶ 34} Judge O'Diam also filed a separate motion, citing R.C. 2303.201(E)(1), requesting that this court order the board to approve reimbursement of court costs out of the probate court's discretionary special-projects fund and requesting an extension of time for the payment of such costs. But the complaint for a writ of mandamus nowhere mentions funding such costs through a special-projects account, nor does it plead any facts pertaining to the existence of a special-projects account, the amount contained in it, and the criteria for accessing it. *See* S.Ct.Prac.R. 12.02(B)(1) (requiring a complaint to state specific facts and to be supported by an affidavit specifying the details of the claim). Accordingly, we do not reach this claim because it is not properly before us. *See State ex rel. Massie v. Gahanna-Jefferson Pub. Schools Bd. of Edn.*, 76 Ohio St.3d 584, 589, 669 N.E.2d 839 (1996).

## CONCLUSION

{¶ 35} For the foregoing reasons, we deny Judge O'Diam's request for a writ of mandamus to enforce his order requiring the board to pay his legal fees and expenses and we deny the motion regarding court costs. The motion for an extension of time is denied as moot. Costs of these proceedings are taxed to the relator.

Writ denied.

O'CONNOR, C.J., and KENNEDY, DONNELLY, and STEWART, JJ., concur.

FRENCH, J., dissents, with an opinion joined by FISCHER, J.

_____

**FRENCH, J., dissenting.**

{¶ 36} In remarkably broad strokes, the majority opinion rewrites our precedent. It ignores our longstanding case authority on the enforcement of a court's funding order. It dismisses separation-of-powers considerations we have

historically recognized in disputes between different branches of government. And it undermines the judiciary's inherent power to control its own administration. Rather than brush aside this precedent, I would apply our established standard for reviewing disputes over a court's funding order, a standard that already accounts for our system of checks and balances.

{¶ 37} And that is the real danger here. We may disagree about whether a court's requests are reasonable, but we should resolve that disagreement by applying a consistent standard for balancing the important interests at stake.

{¶ 38} Applying the established standard, I conclude that relator, Judge Thomas O'Diam, of the probate division of the Greene County Court of Common Pleas, is entitled to the reasonable and necessary fees he requests. Accordingly, I dissent.

### Courts possess inherent powers that must be protected from encroachment by other branches of government

{¶ 39} The majority opinion dismisses the importance of recognizing a court's inherent powers, and that may explain why it is so quick to dismiss the separation-of-powers concerns that R.C. 309.09, 305.14, and 305.17 implicate when we apply them to this case. But understanding the differences between the concept of a court's inherent powers and the separation-of-powers doctrine is vital to understanding why this court promulgated a test to apply in situations like the one before us today—a test the majority opinion fails to even acknowledge.

{¶ 40} Since at least 1896, Ohio has recognized that courts have inherent powers.[1] *See Hale v. State*, 55 Ohio St. 210, 213-214, 45 N.E. 199 (1896). And

---

1. This court has recognized that courts possess inherent power to regulate the practice of law before them and protect the integrity of their proceedings, *State ex rel. Gains v. Maloney*, 102 Ohio St.3d 254, 2004-Ohio-2658, 809 N.E.2d 24, ¶ 14, to order a legislative body to provide funding necessary for a court's efficient administration, *id.*, to order the legislative body to provide funding for private counsel to represent the court, *id.*, to protect its own powers, *State ex rel. Pfeiffer v. Lorain Cty. Common Pleas Court*, 13 Ohio St.2d 133, 137, 235 N.E.2d 232 (1968), to impose a jail sentence for criminal contempt, *Gains* at ¶ 1, to expunge or seal records in unusual and exceptional

since then, this court has consistently and repeatedly said that "courts possess *inherent powers* to effectuate an orderly and efficient administration of justice without being financially or procedurally inhibited by the General Assembly." (Emphasis sic.) *State ex rel. Johnston v. Taulbee*, 66 Ohio St.2d 417, 420-421, 423 N.E.2d 80 (1981), citing *Zangerle v. Cuyahoga Cty. Court of Common Pleas*, 141 Ohio St. 70, 46 N.E.2d 865 (1943), *State ex rel. Foster v. Lucas Cty. Bd. of Commrs.*, 16 Ohio St.2d 89, 242 N.E.2d 884 (1968), *State ex rel. Edwards v. Murray*, 48 Ohio St.2d 303, 358 N.E.2d 577 (1976), and *State ex rel. Lorig v. Clark Cty. Bd. of Commrs.*, 52 Ohio St.2d 70, 369 N.E.2d 1046 (1977). A court's having inherent powers allows it to be free from excessive control by other governmental branches and ensures its independence and autonomy under the separation-of-powers doctrine. *State ex rel. Gains v. Maloney*, 102 Ohio St.3d 254, 2004-Ohio-2658, 809 N.E.2d 24, ¶ 18; *see also State ex rel. Wilke v. Hamilton Cty. Bd. of Commrs.*, 90 Ohio St.3d 55, 61, 734 N.E.2d 811 (2000).

{¶ 41} "[T]he power to control what a court spends, or to totally regulate the process of obtaining funds, ultimately becomes the power to control what the court does. Such a principle is an anathema to an independent judiciary." *State ex rel. Arbaugh v. Richland Cty. Bd. of Commrs.*, 14 Ohio St.3d 5, 6, 470 N.E.2d 880 (1984). To protect their independence, then, common pleas courts and their divisions have inherent authority to order funding that is reasonable and necessary to the court's administration of its business. *Wilke* at 60, citing *State ex rel. Lake Cty. Bd. of Commrs. v. Hoose*, 58 Ohio St.3d 220, 221, 569 N.E.2d 1046 (1991); *State ex rel. Weaver v. Lake Cty. Bd. of Commrs.*, 62 Ohio St.3d 204, 205, 580

---

circumstances, *Schussheim v. Schussheim*, 137 Ohio St.3d 133, 2013-Ohio-4529, 998 N.E.2d 446, ¶ 3, and to appoint counsel for an indigent party, *State ex rel. Butler v. Demis*, 66 Ohio St.2d 123, 132-133, 420 N.E.2d 116 (1981) (holding that because a court's power to appoint counsel for an indigent party is inherent, the legislature could not interfere with that power).

N.E.2d 1090 (1991); and *State ex rel. Morley v. Lordi*, 72 Ohio St.3d 510, 511, 651 N.E.2d 937 (1995).

**{¶ 42}** That does not mean that courts should not cooperate with the legislative process. *Arbaugh at 6.* They should. I recognize—as this court has previously recognized—that we must respect the tripartite balance of power. *See id.* I also recognize that the public interest is best served when the judicial branch cooperates with the executive and legislative branches. *Id.* at 5-6, citing *Taulbee* at 422; *see also State ex rel. Giuliani v. Perk*, 14 Ohio St.2d 235, 237, 237 N.E.2d 397 (1968). But cooperation does not require a court to surrender its inherent powers to another branch. *Taulbee* at 422, quoting *Guiliani* at 237 (" 'voluntary cooperation should not be mistaken for a surrender or diminution of the * * * power to administer justice' "). Complete surrender—what the majority opinion requires—is not balance.

**{¶ 43}** The majority declares that it is a mistake to look at a court's inherent authority without first considering whether the statutes at issue implicate any separation-of-powers concerns. It then concludes that it is difficult to see how there could be any concern "with a scheme that provides a process through which the needs of the court can be met but also requires coordination with other parts of the government." Majority opinion at ¶ 20. But this court has previously recognized that a statutory scheme that infringes on a court's inherent powers is constitutionally infirm.

**{¶ 44}** In *Taulbee*, 66 Ohio St.2d 417, 423 N.E.2d 80, this court expressly held that a statute that gave the legislative branch the power to control the judicial branch's exercise of its inherent authority "to effectuate orderly and efficient administration of justice without being financially or procedurally inhibited by the General Assembly," *id.* at 420-421, was an "unconstitutional legislative encroachment," *id.* at 423. The statute at issue there, former R.C. 2151.10, Sub.S.B. No. 63, 138 Ohio Laws Part I, 251, 254-255, required juvenile-court

judges to provide a proposed budget to the county board of commissioners. The board was then tasked with approving, rejecting or modifying the court's proposed budget. If the juvenile court disagreed with the board's budgetary appropriation, the court could file an original action in the court of appeals and show that the appropriation was reasonably necessary. *Id*. at 419. In this court's review of former R.C. 2151.10, we expressly recognized the courts' inherent powers in funding matters. *See id*. at 420-421. Because the statute granted to a legislative body "the 'power of the purse' over judicial administration," it "unconstitutionally restrict[ed] and impede[d] the judiciary in complete contradiction of our rudimentary democratic principles." *Id*. at 421.

{¶ 45} The statutes at issue here—R.C. 309.09, 305.14, and 305.17—create a process through which local officials and entities receive legal representation. R.C. 309.09(A) designates the county prosecuting attorney as the legal advisor for county officials and entities, including the board of county commissioners and judges. R.C. 305.14 gives to the court of common pleas the power to appoint counsel for a county official or entity when the prosecuting attorney has a conflict of interest that prevents him from undertaking the representation. It gives the prosecuting attorney and the board power over the appointment process by requiring that they file the application for outside counsel with the court of common pleas. R.C. 305.14(A). And R.C. 305.17 purports to grant to the board complete and unfettered authority to decide the amount of compensation outside counsel will receive for the appointed representation.

{¶ 46} I am not suggesting that any of these statutes are unconstitutional on their face, but it is disingenuous for the majority opinion to suggest that there are no constitutional concerns when the statutes are applied in a way that impedes a court's inherent ability to retain and compensate outside counsel—particularly in the context of a dispute between a county court and that county's board. Rather than ignore these concerns, as the majority does, the better approach is to balance

the considerations underlying a court's inherent power against the rightful needs of the other branches of government. That is exactly what this court did when it established a test, the "reasonable and necessary" test, to apply to a dispute over a court's funding order, including a funding order to pay for outside legal counsel. There is no reason to deviate from that test here.

### The reasonable-and-necessary test

{¶ 47} In the spirit of the separation-of-powers doctrine, this court "promulgated a test of 'reasonableness and necessity' to maintain the sovereignty of our respective powers" when a conflict over budget and funding orders occurs. *Arbaugh*, 14 Ohio St.3d at 6, 470 N.E.2d 880. Under that test, a board is obligated to appropriate funds the court requests, "unless the board can establish that the court abused its discretion by requesting unreasonable and unnecessary funding." *Wilke*, 90 Ohio St.3d at 60, 734 N.E.2d 811, citing *State ex rel. Avellone v. Lake Cty. Bd. of Commrs.*, 45 Ohio St.3d 58, 61, 543 N.E.2d 478 (1989); *see also Arbaugh* at 6. The court's funding orders are presumed reasonable, but the board has an opportunity to check the court by rebutting the presumption. *Wilke* at 60; *see also State ex rel. Donaldson v. Alfred*, 66 Ohio St.3d 327, 329, 612 N.E.2d 717 (1993).

{¶ 48} This court has followed that standard even when a court's funding order is to pay the fees of outside counsel. And applying that standard, we have permitted parties to retain outside counsel without strictly complying with R.C. 305.14 (the statute that directs how outside counsel are to be appointed to represent county officers) when there is a clear conflict of interest with one or more of the parties having statutory authority to apply for or to appoint outside counsel under that statute. *See, e.g.*, *State ex rel. Corrigan v. Seminatore*, 66 Ohio St.2d 459, 465-466, 423 N.E.2d 105 (1981); *State ex rel. Jefferson Cty. Children Servs. Bd. v. Hallock*, 28 Ohio St.3d 179, 182, 502 N.E.2d 1036 (1986); *State ex rel. Hillyer v. Tuscarawas Cty. Bd. of Commrs.*, 70 Ohio St.3d 94, 98, 637 N.E.2d 311 (1994).

{¶ 49} *Wilke*, 90 Ohio St.3d 55, 734 N.E.2d 811, involved a probate court's funding order to compensate legal counsel to represent the court in a budget dispute with the board. The board rejected the probate court's budget, so the probate court issued appropriation orders. The board refused to comply with the court's orders, and the probate court initiated a mandamus action to compel compliance. The probate court also issued an order to appropriate money for its outside legal counsel, which it retained without the board's involvement.

{¶ 50} Despite the probate court's retention of counsel outside the statutory mandates, this court granted a writ requiring the board to appropriate the requested funds to the probate court. In doing so, we recognized that the probate court's inherent powers extended to the authority to "order a legislative body to provide funding necessary for the efficient administration of the court, including funding private counsel to represent the court." *Wilke* at 65. The board could not reject the funding order simply because the court failed to comply with R.C. 305.14. Rather, we applied the reasonable-and-necessary test and gave the board an opportunity to show that the probate court abused its discretion when it signed the funding order. Because the board did not introduce evidence sufficient to rebut the presumption that the probate court's funding orders were reasonable and necessary, the board had to provide the requested funding for outside counsel.

{¶ 51} The majority opinion ignores this precedent and the reasonable-and-necessary test, which this court has used to review a court's funding order for outside legal counsel. It attempts to distinguish *Wilke* and other cases in which we enforced a court's funding order despite the failure to follow the statutory process in R.C. 305.14 by stating that "in those cases the statutory process had broken down in some way." Majority opinion at ¶ 23. But the statutory process broke down in this case, too. Rather than completely refusing to join the application to appoint outside counsel, as the board did in *Wilke*, respondents, the Greene County Board of Commissioners and individually named commissioners (collectively, "the

board"), effectively blocked the process to appoint counsel by prolonging and delaying the appointment of counsel. I agree with the majority opinion that "[j]udges cannot simply demand that the taxpayers pay for their every wish," majority opinion at ¶ 24, but the legislative branch may not exercise its authority in a way that keeps a court from exercising its inherent authority.

{¶ 52} The majority opinion focuses on the probate court's failure to strictly follow the statutory process without considering the board's actions. The circumstances under which Judge O'Diam retained outside counsel and his justification for retaining counsel outside of the statutory process are undoubtedly factors in determining whether Judge O'Diam abused his discretion when he ordered funding for outside counsel. But strict compliance with the statutory process is not the end of the analysis, as the majority opinion concludes. I would follow our established precedent, apply the reasonable-and-necessary test, and consider whether the board met its burden to show that Judge O'Diam abused his discretion.

### The conflicts of interest that gave rise to Judge O'Diam's retention of outside counsel

{¶ 53} To consider whether Judge O'Diam's funding order was reasonable and necessary, we must begin by understanding the parties' underlying dispute and the conflicts of interest that led Judge O'Diam to seek outside counsel. Judge O'Diam had a conflict of interest with the prosecuting attorney's office, the general-division common-pleas judges, and the board, essentially every party with the statutory authority to appoint counsel for him. These conflicts of interest began about one year before Judge O'Diam issued his order appointing outside counsel and mandating funding to pay for that counsel.

{¶ 54} In April 2017, Judge O'Diam submitted a 13-page written proposal to the board, the county administrator, and the general-division judges asking to share Courtroom 3 because the probate court's facilities were inadequate and

presented security concerns. The general-division judges, who had control over Courtroom 3, opposed Judge O'Diam's proposal.

{¶ 55} Judge O'Diam continued to engage in discussions with his colleagues. After several months, however, he realized that he might need counsel to represent him if the parties could not reach an amicable resolution. R.C. 309.09(A) designates the prosecuting attorney as the legal advisor for the board and all other county officers, including Judge O'Diam and the general-division judges. As Judge O'Diam stated in the affidavit he submitted to this court as evidence, given the prosecuting attorney's inherent conflict of interest—he may not represent one statutory client against another—Judge O'Diam contacted several law firms that might be able to assist him "should [he] need outside counsel representation" and "in the event [the] matter moved into formal mediation or required [him] to initiate a mandamus action."

{¶ 56} On November 7, 2017, Judge O'Diam sent a 14-page letter to the board stating that he could not reach an amicable resolution with the general-division judges. The letter constituted Judge Diam's "formal request for [the board] to designate Courtroom 3 * * * as the permanent, full-time courtroom" for the probate court and reiterated the points contained in Judge O'Diam's earlier proposal explaining why the probate court should be moved to Courtroom 3.

{¶ 57} That same day, an assistant prosecuting attorney sent an e-mail to the county administrator providing her opinion of the legalities involved in Judge O'Diam's proposal. She included a copy of a statute and explained that the board had "a lot of discretion" in how to respond to Judge O'Diam's proposal. She then stated:

> I do not think Judge O'Diam would have any legal recourse on this as he would have to show that the [board] has a clear legal duty to act, and [that] he is entitled to the relief requested. It does

not appear to me that he could meet his burden under this statute.

Also, mandamus does not lie to compel discretion.

{¶ 58} The assistant prosecuting attorney also acknowledged that special counsel would likely have to be appointed "if it goes any further through the courts."

{¶ 59} By providing this legal opinion—that the board could ignore Judge O'Diam's proposal and that Judge O'Diam could not obtain a writ of mandamus to compel compliance—the assistant prosecuting attorney took a position that was directly adverse to that of Judge O'Diam. And the assistant prosecuting attorney did so in the course of advising the board, the adverse party. This constitutes a direct conflict of interest under Ohio's Rules of Professional Conduct. *See* Prof.Cond.R. 1.7(a)(1) (prohibiting a lawyer's continued representation of a client if the representation of that client will be directly adverse to another client); Comment 10 to Prof.Cond.R. 1.7, (concurrent representation of clients whose interests are directly adverse always creates a conflict of interest); Prof.Cond.R. 1.11(d)(1) (a lawyer serving as a public officer or employee shall comply with Prof.Cond.R. 1.7 and 1.9 (duties to former clients)). This conflict arose *before* Judge O'Diam formally engaged outside counsel.

{¶ 60} Against this backdrop, we can turn to considering the board's actions and the circumstances under which Judge O'Diam retained outside counsel to determine if Judge O'Diam abused his discretion in ordering funding for outside counsel.

**Judge O'Diam's actions were necessary and reasonable**

{¶ 61} Our precedent requires the board to prove that Judge O'Diam's order retaining outside counsel to represent him and directing the board to pay the fees was unnecessary and unreasonable. In my view, the board failed to meet that burden.

{¶ 62} As an initial matter, I note that Judge O'Diam has sought fees only for legal services performed on or after March 15, 2018, which is the day the board filed a complaint for a writ of prohibition against him. Nothing in R.C. 305.14 or any other statute prohibits seeking payment of such fees. And in the face of present and foreseeable conflicts of interest, Judge O'Diam's actions were reasonable.

{¶ 63} In any event, I place little significance on the date that Judge O'Diam engaged Porter, Wright, Morris & Arthur, L.L.C. ("Porter Wright"). Judge O'Diam's need for outside counsel is undisputed, and it is also undisputed that the parties charged with securing that counsel had taken positions directly adverse to his. More importantly, though, this is a funding-order case, and the only relevant question is whether it was necessary and reasonable for Judge O'Diam to start incurring outside-counsel fees beginning in March 2018. I conclude that it was.

{¶ 64} On March 5, 2018, after one year of disagreements over probate-court facilities, Judge O'Diam asked the prosecuting attorney and the board to file a joint application with the court of common pleas so that he could employ outside counsel to represent him. The prosecuting attorney and the board did not file that application until March 14, 2018, one day before the board filed a complaint for a writ of prohibition against Judge O'Diam. The court of common pleas did not grant that application until April 2, two weeks after the board filed the prohibition action and approximately one week after Judge O'Diam filed the complaint for a writ of mandamus in this case. Although the prosecuting attorney, the board, and the court technically complied with their statutory duties under R.C. 305.14 to begin the appointment process, their actions prolonged and delayed the process.

{¶ 65} When Judge O'Diam entered his own order on March 13, directing the board to pay his outside-counsel fees, he faced conflicting orders from his court and the general division regarding control over Courtroom 3. In addition, the board had passed a resolution ordering the relocation of Judge O'Diam's courtroom to a different facility and issued a press release about that relocation. The county

administrator told Judge O'Diam that he had begun to work on implementing the relocation order. Yet no action had been taken on Judge O'Diam's earlier request to have counsel appointed pursuant to R.C. 305.14.

{¶ 66} In fact, once the court of common pleas granted the joint application for outside counsel to be appointed, rather than appointing counsel, the county implemented a competitive-bidding process. As the county administrator admitted in an e-mail dated May 1, 2018, neither R.C. 305.14 nor any other statutes require this process. On April 12, 2018, the board agreed to advertise a request for proposals ("RFP"), which would begin the bidding process. The formal RFP was issued on April 17; proposals were due by May 11, 2018. Porter Wright (which had already appeared on Judge O'Diam's behalf in both the prohibition and mandamus actions before this court) was the only firm that responded to the RFP. Porter Wright attorney Kathleen Trafford met with the county administrator for an interview on May 21, 2018. Judge O'Diam also attended that interview. The board rejected Porter Wright's proposal after Porter Wright declined to reduce its fees to the rate charged by the county's typical counsel. In this way, the board used the authority granted to it under R.C. 305.14 and 305.17 to block Porter Wright from being appointed to represent Judge O'Diam. Subsequently, the board re-advertised the RFP and undertook another competitive-bidding process. The second RFP was issued on June 7, 2018.

{¶ 67} In the meantime, the board's prohibition action against Judge O'Diam and Judge O'Diam's mandamus action against the board had been proceeding before this court. Had Judge O'Diam waited for the board to appoint counsel to represent him, he would not have received representation until at least July 2018, because the board did not plan on interviewing the prospective firms until then. By then, however, Porter Wright had filed a motion to dismiss on Judge O'Diam's behalf in the prohibition action, *see State ex rel. Greene Cty. Bd. of Commrs. v. O'Diam*, 156 Ohio St.3d 458, 2019-Ohio-1676, 129 N.E.3d 393, the

24

board had responded, and this court had referred that matter to mediation, 152 Ohio St.3d 1435, 2018-Ohio-1464, 95 N.E.3d 419.  In this case, Porter Wright filed a complaint for a writ of mandamus on Judge O'Diam's behalf, the board responded, and this court referred this matter to mediation as well, 152 Ohio St.3d 1435, 2018-Ohio-1464, 95 N.E.3d 419.  Given these circumstances, to suggest that Judge O'Diam should have followed the commands of the very individuals he was up against as adversaries is to ignore the reality he faced.

{¶ 68} The procedural delays and the protracted hiring process the board employed *after* taking formal legal action against Judge O'Diam justified Judge O'Diam's decision to retain Porter Wright.  His actions were necessary and reasonable not only to ensure that he had adequate legal representation for ongoing litigation but also to ensure that he, and not his legal adversaries, would make the decision on the caliber of representation he needed.  Considering all the facts and circumstances surrounding Judge O'Diam's decision to retain outside counsel and issue an order requiring the board to pay for outside counsel, I conclude that the board failed to show that the court's funding order was unreasonable and unnecessary.

### Porter Wright's fees are reasonable

{¶ 69} Because I conclude that Judge O'Diam's retention of Porter Wright was necessary and reasonable, I now consider whether the firm's rates and billed fees are reasonable.  I conclude that they are.

{¶ 70} Judge O'Diam incurred $61,794.50 in attorney fees from March 2018 through March 2019 for Porter Wright's representation in two original actions in this court.  These fees included expenses for preparing and responding to motions and pleadings, preparing and responding to discovery requests, including multiple discovery depositions, and representing Judge O'Diam in mediation.  Total expenses, in addition to attorney fees, amounted to $1,651.80.  Trafford recorded an additional eight hours to prepare an evidentiary record, totaling $2,800.

**{¶ 71}** Trafford indicated in her affidavit that she submitted to this court as evidence that the billing rates at which Porter Wright agreed to represent Judge O'Diam were a "substantial discount below the standard hourly rates established by the Firm—a discount of more than one-third." The rates were also lower than the rates approved as reasonable for these attorneys in a prior federal-court case. *See Northeast Ohio Coalition for the Homeless v. Husted*, S.D.Ohio Nos. 2:06-CV-00896 and 2:12-CV-00562, 2014 WL 4829597, *50 (Sept. 29, 2014), *aff'd in part and vacated in part*, 831 F.3d 686, 715-720 (6th Cir.2016). And they are within the range of rates we have approved for attorneys representing clients in original actions here. *See State ex rel. Miller v. Bova*, 151 Ohio St.3d 1523, 2018-Ohio-557, 91 N.E.3d 755. In short, Porter Wright's rates are reasonable. *See Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, ___ Ohio St.3d ___, 2020-Ohio-1056, ___ N.E.3d ___, ¶ 11.

**{¶ 72}** Porter Wright's overall hours billed to Judge O'Diam are also reasonable. Despite the length of the parties' prelitigation dispute, and the time Porter Wright expended advising Judge O'Diam in this matter, Porter Wright is not seeking any fees incurred before the board filed the complaint for a writ of prohibition against Judge O'Diam. Porter Wright has submitted detailed documentation of the hours its counsel and support staff spent representing Judge O'Diam. The board has not disputed the reasonableness of any of the hours Porter Wright expended representing Judge O'Diam. Accordingly, I would approve all the hours for which Porter Wright seeks reimbursement.

**Conclusion**

**{¶ 73}** Judge O'Diam's appointment of counsel was lawful, necessary, and reasonable. His appointed-counsel fees are also reasonable. I would grant Judge O'Diam's request for a writ of mandamus to enforce his order requiring the board to pay his legal fees. Consistent with this decision, I would also grant his motion regarding court costs.

FISCHER, J., concurs in the foregoing opinion.

––––––––––––––––––

Porter, Wright, Morris & Arthur, L.L.P., Kathleen M. Trafford, and Caroline M. Gentry, for relator.

Surdyk, Dowd & Turner Co., L.P.A., and Dawn M. Frick, for respondents.

Paul W. Flowers Co., L.P.A., Paul W. Flowers, and Louis E. Grube, for amicus curiae, Ohio Association of Probate Judges.

––––––––––––––––––