[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Williams-Byers v. S. Euclid*, Slip Opinion No. 2020-Ohio-5534.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-5534

THE STATE EX REL. WILLIAMS-BYERS, JUDGE, ET AL. *v.* CITY OF SOUTH EUCLID ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Williams-Byers v. S. Euclid*, Slip Opinion No. 2020-Ohio-5534.]

*Mandamus—Municipal-court budget—When a statute grants the legislative authority discretion to determine funding for a particular budget item, a city may refuse to fund even reasonable requests by a court—The burden is on the court to establish that the city's allocation constitutes an abuse of discretion—Writ denied.*

(No. 2019-0864—Submitted April 7, 2020—Decided December 8, 2020.)

IN MANDAMUS.

_____

**DEWINE, J.**

{¶ 1} This case involves a dispute over a municipal-court budget. The judge asked for a sizeable increase to the court's budget. The city council did not give the judge the amount she requested, so the judge issued an order commanding the city to pay the full amount. The municipal court then filed a petition for a writ of mandamus asking this court to compel the city to comply with the funding order. We deny the writ.

## I. The dispute over city funds

### A. *Tough fiscal circumstances and a judge's demand for more money*

{¶ 2} Judge Gayle Williams-Byers requested that the South Euclid City Council allocate $920,385 for the South Euclid Municipal Court's 2019 budget. This was $211,926 more than the council had allocated to the court for the previous year—an increase of 30 percent.

{¶ 3} The judge's request for this funding increase came at a difficult time for the city. The city had run budget deficits the previous two years and had made substantial cuts to a number of departments. In 2018, the city's expenditures exceeded its revenue by over $250,000, forcing it to lay off employees, reduce road maintenance and other basic services, close public parks, and put off needed infrastructure improvements. The city anticipated that its revenue would remain stagnant in 2019, while the costs of critical services—such as police and fire protection—would continue to increase.

{¶ 4} On the day of the city council's final budget meeting, the court issued an order (the "funding order") stating that $920,385 was "the reasonable and necessary funding" for the court's 2019 budget and directing the city council to allocate the full amount. Later that day, the city council passed a budget resolution appropriating $637,134 to the municipal court for 2019, which was $71,325 less than had been allocated the previous year. At the same time, council reduced the police-department budget by $292,000, resulting in the city being unable to hire three additional officers.

2

{¶ 5} Judge Williams-Byers and Clerk of Courts Chardale Sumpter (collectively, "the municipal court") subsequently filed a complaint for a writ of mandamus in this court seeking to compel the city and its council members (collectively, "the city")[1] to comply with the judge's funding order. We issued an alternative writ and set a schedule for submitting evidence and filing briefs. 157 Ohio St.3d 1445, 2019-Ohio-4177, 132 N.E.3d 717.

{¶ 6} The city says that after this lawsuit was filed, the city council gave the court an additional $90,866 in funding for its 2019 budget. Thus, in total, the municipal court ultimately received nearly $20,000 more than it had been allotted for the previous year. The municipal court does not dispute this fact and has acknowledged that any supplemental appropriation would count toward the total amount of funding sought by the court. Thus, the municipal court has asked us to order the city to pay the full budget amount requested by the judge "less all amounts later appropriated"—in other words, the judge demands another $192,385 from the city.

### B. Disagreement over the court's budgetary needs

{¶ 7} According to the judge, the bulk of the increase in the court's requested budget can be accounted for as follows:

- $19,210 in additional wages for three employees who, the judge says, took on extra responsibilities, as well as two new staff members—a deputy clerk and a probation officer—at a cost of $63,660;

- An estimated increase of $51,404.80 in healthcare benefits and $34,980 in fringe benefits for all employees; and

- $6,033 for a 2 percent, cost-of-living salary adjustment for all employees.

---

1. The city council members named in the petition are Dennis Fiorelli, Joseph Frank, Ruth Gray, Jane Goodman, Sara Continenza, Martin Gelfand, and "John or Jane Doe." Justin Tisdale was appointed to the city council after this action was filed. Tisdale is substituted for "John or Jane Doe." S.Ct.Prac.R. 4.06(B); Civ.R. 25(D).

Of these items, the city takes issue with the comprehensive cost-of-living increase, the additional $19,210 in pay, and the creation of two new positions and the healthcare and fringe-benefit costs associated with those positions. The city does not contest the increased cost in benefits for the court's current employees.

{¶ 8} The evidence in support of the municipal court's contention that council's allocation was unreasonable consists primarily of prior-year budgets and expenditures, recordings from the council's budget hearings, and correspondence with the city. Yet Judge Williams-Byers and Clerk Sumpter have provided nothing to support the necessity of these added budget expenditures beyond their own explanations made during the budget process and contained in their personal affidavits.

{¶ 9} Another portion of the requested budget increase relates to the court's use of grant money and discretionary funds to pay for some its operating costs. Judge Williams-Byers says she wanted to rely less on discretionary funds in 2019 so that she could save up to finance an upgraded case-management system. As the municipal court explains in its merit brief, "the Court needed to abstain from spending as many of its Discretionary Funds on staffing in 2019 to accumulate money to pay for this expense in 2020." The costs shifted to the city that had previously been paid for out of the court's discretionary funds amounted to $22,187—roughly 10 percent of the proposed increase.

{¶ 10} The city questions the judge's sincerity with regard to her efforts to conserve discretionary funds for the system upgrade. As the city points out, its evidence demonstrates that the court spent nearly $60,000 on conferences and trainings during the previous six years. In 2018 and 2019 alone, Judge Williams-Byers traveled out of state ten times to attend conferences in such prime locations as Hawaii and Panama City, Panama. Judge Williams-Byers and the small-claims-court magistrate were slated to attend a weeklong seminar in Sovana, Italy, less than a month after issuing her funding order. And, according to the city's finance

director, Judge Williams-Byers had—all while embroiled in this budget dispute—set up purchase orders totaling $3,990 for her and the magistrate to travel to France.

{¶ 11} To further support its claims that its budget allocation was reasonable, the city submitted the budgets of nearby courts demonstrating that the South Euclid Municipal Court spends significantly more money per case than other jurisdictions.[2] Thus, the city contends that the funds it allotted were sufficient to meet the court's operating needs and that any problem is due to the judge's inability to manage her budget. The municipal court counters that the courts relied upon by the city are not appropriate comparisons because those courts differ from the South Euclid Municipal Court in significant ways.

## II. The Ohio Revised Code sets forth who should determine the appropriate funding for a particular budget item

{¶ 12} To review the municipal court's claim that it is entitled to a writ of mandamus compelling the city to provide additional funds, we begin with the applicable statutes. As we have acknowledged, the question "whether a local legislative authority is under a mandatory duty to appropriate funds for certain budget requests is dependent upon the statute authorizing the expenditure." *State ex rel. Musser v. Massillon*, 12 Ohio St.3d 42, 43, 465 N.E.2d 400 (1984).

{¶ 13} For the most part, the parties ignore the relevant statutes. Instead, the municipal court relies upon the doctrine of inherent authority in support of its claim for relief. Judge Williams-Byers contends that the municipal court possesses inherent power to compel funding and that the court is therefore entitled to the full

2. The city has submitted the purported affidavits of Sharon McMichael, the financial director for Cleveland Heights, and Keith Benjamin, the clerk of South Euclid's city council, along with documents that are attached as exhibits and authenticated by the affidavits. But neither affidavit includes a signature page. "Unsigned affidavits have no evidentiary value." *State ex rel. Dawson v. Bloom-Carroll Local School Dist.*, 131 Ohio St.3d 10, 2011-Ohio-6009, 959 N.E.2d 524, ¶ 20. We therefore disregard the McMichael and Benjamin affidavits and the documents they purport to authenticate. The data from the Cleveland Heights Municipal Court offered by the city for comparison that is attached to the McMichael affidavit is excluded from consideration.

amount listed in the funding order, absent a showing by the city that the amount requested is unreasonable.

{¶ 14} We have recognized that in some situations, a court may exercise inherent judicial power to compel essential funding when necessary to preserve judicial independence. The justification for this intrusion into the legislative realm is that the separation of powers could be threatened if the legislative branch completely refuses to provide the essential funds needed for the judicial branch to fulfill its basic constitutional and statutory functions. *See State ex rel. Finley v. Pfeiffer*, 163 Ohio St. 149, 154-155, 126 N.E.2d 57 (1955).

{¶ 15} But we proceed cautiously when a judge seeks to use the court's inherent powers to bypass ordinary budget channels. This is because problems arise when one branch of government seizes for itself a power rightly belonging to another branch of government. Municipalities have limited public dollars to allocate among competing public needs, and the legislative process is designed to address those types of trade-offs. The legislative branch is more broadly representative of the citizenry than the judiciary; funding priorities are explicitly discussed in legislative elections; legislative bodies may hold budget hearings and otherwise receive public input; experts may be employed to help in decisionmaking; and the legislative branch has tools to achieve compromise among competing priorities.

{¶ 16} In contrast, when the judiciary wrests the funding power away from the legislative branch, budgetary decisions are made in a vacuum with no opportunity for public input or the balancing of competing priorities. While we do not doubt that many courts would benefit from more money, we also recognize that other public offices also have unmet needs, and the legislative branch is uniquely equipped to make the difficult trade-offs required in the budgeting process. For these reasons, judges should seek to resolve funding disputes through the regular budgetary process, and funding orders and lawsuits invoking inherent authority

should come only when all else has failed—when a local funding authority's refusal to adequately budget imperils the court's ability to carry out its essential constitutional and statutory functions.

{¶ 17} We have recognized the need to maintain this separation of powers in our prior caselaw surrounding municipal-court funding. Thus, when a statute grants the legislative authority discretion to determine funding for a particular budget item, we have held that the city may refuse to fund even reasonable requests by the court and that the burden is on the court to establish that the city's allocation constitutes an abuse of discretion. *State ex rel. Durkin v. Youngstown City Council*, 9 Ohio St.3d 132, 134, 459 N.E.2d 213 (1984); *State ex rel. Cleveland Mun. Court v. Cleveland City Council*, 34 Ohio St.2d 120, 128, 296 N.E.2d 544 (1973). As we have explained,

> Municipal Courts remain dependent to a reasonable extent upon the legislative authority of the municipality in which they sit. They are not entitled by statute or otherwise to an unquestioned appropriation of all sums of money requested, nor is their entitlement to be determined solely on whether their request constitutes an abuse of discretion.

*Cleveland Mun. Court* at 127. Budgetary decisions necessarily involve a consideration of "the limited funds available for disbursement to all departments and divisions of city government and the ability of the court to properly exercise its judicial function." *Id*. at 125. Thus, to the extent that separation-of-powers concerns are implicated in a budget decision, this court's review has been confined to whether the legislative authority's reduced allocation was sufficient to impede the court in its administration of justice. *Id*. at 128. Otherwise, "[a]bsent an express statutory duty, the legislative authorities of a municipal corporation are not required

to allocate all funds sought for the administration of justice by a municipal court." *Id.* at paragraph one of the syllabus.

{¶ 18} We need not decide the scope of the municipal court's inherent powers here. Judge Williams-Byers primarily contends that the changes would *improve* the administration of justice within the municipal court, but she does not meaningfully argue that the budget allocation has impeded the court's ability to carry out its essential duties. And the Revised Code provides everything we need to resolve this case. R.C. Chapter 1901 dictates who should determine the salaries of municipal-court judges (R.C. 1901.11), clerks (R.C. 1901.31 and 1901.311), bailiffs and court reporters (R.C. 1901.32), courtroom staff and probation officers (R.C. 1901.33), and prosecuting attorneys (R.C. 1901.34). It also provides for funding for courthouse accommodations, additional staff, and other needs of the court. R.C. 1901.36. No one has alleged that these statutes are unconstitutional. We therefore proceed to apply the law set forth by the General Assembly.

### III. The municipal court has failed to establish its entitlement to a writ

{¶ 19} Judge Williams-Byers has requested funding for two new court positions—a deputy clerk and a probation officer—as well as increased compensation for two other deputy clerks and the current probation officer and cost-of-living increases for all employees. We address each in turn.

### A. *Probation officers*

{¶ 20} With respect to the hiring of and compensation for probation officers, R.C. 1901.33(A) controls. That section leaves the salary determination for probation officers to the legislative authority: "Each appointee shall receive the compensation out of the city treasury that the legislative authority prescribes." Because this statute places discretion with the city council, the city may refuse the municipal court's request for funding for probation-officer positions, and the burden is on the judge to establish that the denial of funding constitutes an abuse of

8

discretion. We conclude that judge has not met that burden, and she is therefore not entitled to mandamus relief to fund the hiring of an additional probation officer.

### B. Deputy clerks

{¶ 21} The hiring and compensation of deputy clerks is controlled by R.C. 1901.31(H). Under that provision, deputy clerks "may be appointed by the clerk and shall receive the compensation, payable in either biweekly installments or semimonthly installments * * * out of the city treasury, that the clerk may prescribe." This provision allows the clerk to set the salaries of the deputy clerks and imposes a duty upon the city to appropriate funds for deputy-clerk salaries.

{¶ 22} Because the statute grants the clerk the discretion to determine the amount of a deputy clerk's compensation, we have said that the burden is on the funding authority to demonstrate that the clerk's salary request is unreasonable or an abuse of discretion. *Durkin*, 9 Ohio St.3d at 134, 459 N.E.2d 213. The city's financial resources may be considered in evaluating the reasonableness of the request. *State ex rel. Britt v. Franklin Cty. Bd. of Commrs.*, 18 Ohio St.3d 1, 3-4, 480 N.E.2d 77 (1985).

{¶ 23} Here, there are critical defects in the clerk's attestations with respect to this claim. The mandamus petition itself alleges that the clerk appoints deputy clerks and sets their compensation pursuant to R.C. 1901.31(H). But Clerk Sumpter's verified statement in support of the petition says, "[N]otwithstanding the legal authorities cited within these paragraphs, the regular practice within the South Euclid Municipal Court is that the Judge consults with me regarding the hiring and compensation of deputy clerks, but she maintains principal influence over those decisions." And in her affidavit, Clerk Sumpter avers that it was Judge Williams-Byers who proposed hiring a deputy clerk at $30,000 a year, "based on her own first-hand assessment," with "input" from the clerk.

{¶ 24} The statute doesn't give the judge any authority to appoint deputy clerks or to determine their salaries. Only the clerk has that power. The clerk's

sworn statements make clear that these hiring and compensation decisions were ultimately made by the judge. Thus, with respect to funding for deputy-clerk positions, the clerk has failed to set forth facts sufficient to support a claim of relief in mandamus.

### C. Health-insurance benefits

{¶ 25} The city does not take issue with the general increase in the cost of healthcare and fringe benefits for court employees; it contests those amounts only with respect to the increase in benefits created by the proposed new positions. Because Judge Williams-Byers and Clerk Sumpter are not entitled to an order compelling the city to fund the new positions, they are likewise not entitled to funding to cover benefits for those positions.[3]

### D. Cost-of-living adjustments

{¶ 26} For the remaining employees, the proposed budget attached to Judge Williams-Byers's funding order incorporates a 2 percent cost-of-living salary increase. As with the request for probation-officer and deputy-clerk funding, we consult the applicable statutes to see who is authorized to make salary determinations for the remaining employees.

{¶ 27} The judge's request for a cost-of-living adjustment for Clerk Sumpter is quickly rejected. For a court like the South Euclid Municipal Court that serves a population of less than 100,000, the question who has discretion over the clerk's salary depends on whether the court's revenues equaled or exceeded its expenditures in the preceding year. R.C. 1901.31(C)(1). If revenues exceed or equal expenditures, the clerk "shall receive the annual compensation that the presiding judge of the court prescribes." *Id.* If the court spent more than it brought

---

3. It is worth noting, however, that once the anticipated health-insurance costs for the two new positions are removed, the increase to the court's employee-healthcare expenditures is just $23,344.80—almost all of which is the result of one employee having switched from single-person to family coverage.

10

in, however, then the clerk "shall receive the annual compensation that the legislative authority prescribes." *Id.*

{¶ 28} Judge Williams-Byers's affidavit makes clear that the court's expenditures exceeded its revenues. Indeed, much of her argument is focused on the city council's attempts to get her to reduce her operating costs to be more in line with the revenue generated by the court. Because Judge Williams-Byers acknowledges that the court's revenues are less than its expenditures, the clerk's salary is within the discretion of the legislative authority. *See id.* The city is therefore free to refuse the funding increase proposed by the judge, and absent a showing that the city has abused its discretion, the judge is not entitled to mandamus relief. Judge Williams-Byers has not made that showing here.

{¶ 29} Conversely, the court does have statutory authority to appoint bailiffs and determine their salaries. R.C. 1901.32(A) and (B) (bailiffs and deputy bailiffs "shall receive the annual compensation that the court prescribes"). Similarly, compensation for the magistrate of the small claims division is governed by R.C. 1925.01(B), which provides: "Proceedings in the small claims division of a municipal court or a county court may be conducted by a magistrate appointed by the court. The magistrate * * * shall receive the annual compensation that the court prescribes." Because the statute gives the court discretion to determine the appropriate compensation for these positions, the city has the burden of establishing that the judge's determination constitutes an abuse of discretion.

{¶ 30} The cost-of-living adjustments increased the city's portion of the magistrate's salary by $490 and its portion of the wages of three bailiffs by $1,973. But the court had previously paid a portion of the bailiffs' salaries using its discretionary funds; in 2019, it requested that the city pay the entire amount. Thus, the court requested a total increase of $6,897 in funding for the bailiff positions.

{¶ 31} It is not necessary to decide whether the city has established that these amounts were unreasonable. Judge Williams-Byers does not dispute that the

city has made an additional appropriation of over $90,000 to the court's 2019 budget. That is more than enough to cover these raises and the increased cost of benefits that the city does not contest. In reviewing a claim for mandamus relief, we must "consider the facts and conditions at the time we determine whether to grant the writ." *State ex rel. Wilke v. Hamilton Cty. Bd. of Commrs.*, 90 Ohio St.3d 55, 64, 734 N.E.2d 811 (2000), citing *State ex rel. Wilson v. Sunderland*, 87 Ohio St.3d 548, 549, 721 N.E.2d 1055 (2000). We therefore deny the request for a writ of mandamus with respect to the municipal court's demand for additional funding.

## IV. We deny the municipal court's request for attorneys' fees

{¶ 32} In addition to requesting an order that the city allocate more funds for the municipal court's 2019 budget, Judge Williams-Byers and Clerk Sumpter seek a writ of mandamus ordering the city to pay the litigation costs expended to enforce the municipal court's funding order. Because we have determined that the municipal court's request for additional funding lacks merit, we deny the request for the payment of legal expenses.

## V. Conclusion

{¶ 33} For the reasons set forth above, we deny the writ of mandamus in its entirety.

Writ denied.

O'CONNOR, C.J., and KENNEDY, FRENCH, and FISCHER, JJ., concur.

DONNELLY and STEWART, JJ., not participating.

_____

Montgomery Jonson, L.L.P., George D. Jonson, and Kimberly V. Riley, for relators.

Walter Haverfield, L.L.P., R. Todd Hunt, and Alejandro V. Cortes, and Michael P. Lograsso, Director of Law, city of South Euclid, for respondents.

_____