[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Grendell v. Walder*, Slip Opinion No. 2022-Ohio-211.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-211

THE STATE EX REL. GRENDELL, JUDGE, *v*. WALDER, AUD.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Grendell v. Walder*, Slip Opinion No. 2022-Ohio-211.]

*Mandamus—R.C. 319.16—Common pleas court judge sought writ of mandamus ordering county auditor to issue warrants on county treasurer for payment of court-ordered expenditures—Writ granted.*

(No. 2020-1070—Submitted October 5, 2021—Decided February 1, 2022.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} In this original action, relator, Timothy J. Grendell, judge of the Geauga County Common Pleas Court's juvenile and probate divisions, seeks a writ of mandamus ordering respondent, Charles E. Walder, the Geauga County auditor, to issue warrants on the county treasurer to pay for court-ordered expenditures.  We previously granted an alternative writ, 162 Ohio St.3d 1425, 2021-Ohio-1202, 166 N.E.3d 27, and we now grant a writ of mandamus.

## I. Legal background

{¶ 2} R.C. 319.16 prescribes how a county auditor issues warrants on the county treasurer. Relevant here, the word "warrant" refers to a "warrant drawn by a county official, directing the county treasurer to pay a sum of money out of county funds to bearer, to a named individual, or to the named individual's order." *Black's Law Dictionary* 1901-1902 (11th Ed.2019).

{¶ 3} The parties have placed two versions of R.C. 319.16 at issue. Former R.C. 319.16, 2009 Sub.S.B. No. 79, provided:

> The county auditor shall issue warrants * * * on the county treasurer for all moneys payable from the county treasury, upon presentation of the proper order or voucher and evidentiary matter for the moneys * * *. The auditor shall not issue a warrant for the payment of any claim against the county, unless it is allowed by the board of county commissioners, except where the amount due is fixed by law or is allowed by an officer or tribunal * * * so authorized by law. If the auditor questions the validity of an expenditure that is within available appropriations and for which a proper order or voucher and evidentiary matter is presented, the auditor shall notify the board, officer, or tribunal who presented the voucher. If the board, officer, or tribunal determines that the expenditure is valid and the auditor continues to refuse to issue the appropriate warrant on the county treasury, a writ of mandamus may be sought. The court shall issue a writ of mandamus for issuance of the warrant if the court determines that the claim is valid.

> Evidentiary matter includes original invoices, receipts, bills and checks, and legible copies of contracts.

**{¶ 4}** The General Assembly amended R.C. 319.16 after Judge Grendell filed his mandamus complaint on September 2, 2020. *See* 2020 Am.Sub.S.B. No. 10 (effective Apr. 7, 2021). The changes relevant here are set forth in divisions (A)(2) and (D) of that statute. The former division provides that the county auditor "shall issue warrants" when presented with a "proper court order," with the caveat that the county auditor may request "legible copies of any court-approved invoice, bill, receipt, check, or contract related to the order, redacted as required by law, to the extent those documents exist." R.C. 319.16(A)(2). The latter division empowers the county auditor to "question[] the validity of an expenditure under division (A)(2) * * * that is within available appropriations" but requires the auditor to give notice of that determination to the court that presented the request. R.C. 319.16(D). In doing so, the county auditor "shall issue the warrant under protest, and shall notify the auditor of state of the protest," at which point the auditor bears no "liability for that expenditure." *Id.* But "[i]f the auditor refuses to issue the warrant, a writ of mandamus may be sought" and "[t]he court shall issue a writ of mandamus for issuance of the warrant if the court determines that the claim is valid." *Id.*

## II. Factual background

**{¶ 5}** Judge Grendell seeks a writ of mandamus ordering Walder to issue warrants for five categories of expenditures relating to the juvenile and probate divisions of the Geauga County Common Pleas Court ("the Geauga courts"): robocalls, newspaper advertisements, website upgrades, mileage reimbursements, and publication fees.

### A. Robocalls

**{¶ 6}** Around the onset of the COVID-19 pandemic, Judge Grendell hired TRZ Business Services ("TRZ") to provide robocall services to Geauga County residents informing them of the pandemic's impact on the Geauga courts'

operations. TRZ made these calls and submitted an invoice dated April 1, 2020, requesting payment in the amount of $2,450.88.

{¶ 7} On April 24, 2020, Walder sent a letter to Judge Grendell informing him that TRZ's invoice would not be paid, because Judge Grendell had stated in the calls that "no tax dollars were used for this call." In Walder's view, Judge Grendell contradicted himself by requesting payment to TRZ from public funds.

{¶ 8} On April 28, 2020, Judge Grendell sent a letter to Walder arguing that his statement regarding the nonuse of tax dollars was accurate because he was seeking payment from the Geauga courts' special-projects funds, which, Judge Grendell explained, were sourced from filing fees rather than tax dollars. Judge Grendell further explained that the calls were the "least expensive way" to communicate information about the courts' operations during the pandemic. That same day, Judge Grendell issued orders directing that half of TRZ's invoice be paid out of the juvenile court's fund and that half of it be paid out of the probate court's fund. Judge Grendell submitted these orders to Walder, together with TRZ's invoice, two vouchers in the amount of $1,225.44 each, and copies of past orders establishing the Geauga courts' special-projects funds.

{¶ 9} On April 29, 2020, Walder sent a letter to Judge Grendell stating that TRZ's invoice would not be paid because his requests did not constitute "valid claims against the Geauga County Treasury."

*B. Newspaper advertisements*

{¶ 10} In 2013, the probate court established the "Good Deeds Program" to provide Geauga County residents with information about the recording and transferring of deeds upon death. Prior to the COVID-19 pandemic, the probate court scheduled multiple in-person public meetings under the program that had to be cancelled due to the pandemic. During the pandemic, Judge Grendell advertised a program-related checklist and schedule of online program meetings in local weekly newspapers. Chagrin Valley Printing and Karlovec Media Group published

the advertisements and invoiced the probate court for $910 and $802, respectively, for their services.

### 1. Chagrin Valley Printing

{¶ 11} On April 14, 2020, Judge Grendell issued an order directing payment to Chagrin Valley Printing out of the probate court's special-projects fund. Judge Grendell submitted the order to Walder that same day, together with a purchase order, invoice, copy of the advertisement, and copy of a past order establishing the probate court's special-projects fund.

{¶ 12} On April 24, 2020, Walder sent a letter to Judge Grendell stating that Chagrin Valley Printing would not be paid, because Judge Grendell had stated in the advertisement that "no tax dollars were used to pay for this advertisement" and that the Good Deeds Program was a "free" service. In Walder's view, Judge Grendell contradicted himself by requesting payment to Chagrin Valley Printing from public funds.

{¶ 13} On April 28, 2020, Judge Grendell sent a letter to Walder arguing that his statements in the advertisements were accurate because he was seeking payment from the special-projects fund, which was sourced from filing fees rather than tax dollars. Judge Grendell further explained that the advertisements saved the public time and money because the program aided people in excluding their assets from probate. Walder again refused to act on Judge Grendell's request, explaining that it did not constitute a "valid claim[] against the Geauga County Treasury."

### 2. Karlovec Media Group

{¶ 14} Judge Grendell issued an order on April 29, 2020, directing payment to the Karlovec Media Group out of the probate court's special-projects fund. Judge Grendell submitted the order to Walder that same day, together with a purchase order, invoice, copy of the advertisement, and copy of a past order establishing the probate court's special-projects fund.

**{¶ 15}** On May 4, 2020, Walder sent a letter to Judge Grendell stating that Karlovec Media Group would not be paid, asserting the same reasons that he had relied on to deny payment to Chagrin Valley Printing. Judge Grendell responded to Walder by letter, justifying the content of the advertisements on the same grounds that he had relied on regarding the Chagrin Valley Printing advertisements.

*C. Website upgrades*

**{¶ 16}** On October 15, 2019, Judge Grendell issued an order directing a $7,231.50 payment to Company 119 for upgrading the juvenile court's website. Judge Grendell submitted the order to Walder soon thereafter, together with a purchase order and invoice. About a week later, Walder denied the payment because Judge Grendell had not submitted the court's contract with Company 119 with his request.

**{¶ 17}** On October 28, 2019, Kimberly Laurie, administrator of the Geauga courts, sent Walder the Company 119 contract and the project outline. The contract specified a total payment of $24,105, payable in four installments of 30 percent, 30 percent, 30 percent, and 10 percent of the total.

**{¶ 18}** On November 18, 2019, Walder again denied payment, stating that "[u]pon review of the contract as submitted, we find no Auditor's Certification as required by ORC 5705.41(D)(1) prior to execution of the contract. This is required or the contract is void per that section of ORC." Although Laurie sent further documentation, Walder still refused to pay because Judge Grendell had failed to obtain an auditor's certificate.

**{¶ 19}** On January 3, 2020, Judge Grendell issued another order directing a $14,463.00 payment to Company 119 for additional installments under the contract. Judge Grendell submitted the order to Walder that same day, together with a purchase order and two invoices. Less than a week later, Walder denied payment for failure to submit an auditor's certificate.

*D.  Mileage reimbursements*

**{¶ 20}** Judge Grendell seeks a warrant directing travel-related reimbursements to Laurie in the amount of $142.69.  This total derives from two categories of Laurie's travel.

### 1.  Reimbursement request No. 1

**{¶ 21}** On January 31, 2019, Judge Grendell submitted a "payment batch" to Walder that included mileage-reimbursement forms that he had approved for Laurie, a purchase order, and a court order directing and validating the expenditure of the funds.  The reimbursement request related to Laurie's travel to attend meetings.

**{¶ 22}** On February 5, 2019, Walder returned the payment batch without explanation.  Later, Walder and a member of his staff, Kate Jacob, explained that the batch was returned because it did not present "proper order(s), or voucher(s) and evidentiary matter(s)."  Walder also explained that Laurie's request for mileage reimbursement could not be processed because, in his view, some of the travel fell within Internal Revenue Service rules relating to deductions for travel to and from a temporary work location.

**{¶ 23}** On February 11, 2019, the Geauga courts resubmitted the batch for payment.  In response, Ronald Leyde, the chief deputy auditor, emailed Laurie and reiterated the concerns that Walder had communicated to her about her mileage-reimbursement request.  He also explained that the batch had an incorrect general-ledger date.  Laurie changed the date and removed her mileage-reimbursement request so that the other items within the batch could be paid.

**{¶ 24}** Throughout the middle-to-latter part of February 2019, Judge Grendell and Walder exchanged emails concerning Laurie's mileage-reimbursement request, without resolution.

**{¶ 25}** On March 21, 2019, Judge Grendell issued another order directing Walder to reimburse Laurie's mileage.

### 2. Reimbursement request No. 2

{¶ 26} On March 23, 2020, Judge Grendell issued an order directing payment to Laurie for her travel to nursing homes and senior centers. Judge Grendell submitted the order to Walder that same day, together with Laurie's mileage-reimbursement form and a purchase order.

{¶ 27} On April 6, 2020, Jacob emailed Patricia Behrend, a member of Judge Grendell's staff, explaining that Laurie's request would not be paid, because it sought "reimbursement for transportation between multiple caroling events at area nursing homes that Judge Grendell used for campaign purposes on his personal political campaign's Facebook page." Jacob asked Behrend to "provide us with Judge Grendell's additional explicit affirmation that said events, despite his use of them for his personal political campaign, were actually official Geauga County Juvenile Probate Court events with a public purpose beyond campaigning." Behrend responded that "caroling is a court activity for our community outreach program."

### E. Publication fees

{¶ 28} On February 14, 2019, Judge Grendell issued an order providing that the juvenile court would pay $61.95 to 21st Century Media to publish a notice regarding a pending juvenile case, subject to reimbursement by the parties. Judge Grendell submitted the order to Walder that same day, together with a purchase order. Walder denied payment the following week, citing missing evidentiary materials as the reason for the denial.

{¶ 29} On April 4, 2019, Judge Grendell resubmitted his order to Walder, together with an amended purchase order and an invoice from 21st Century Media. A week later, Walder denied the payment, directing Judge Grendell to "submit this invoice on an encumbrance opened prior to 12/17/18 as that is the date the obligation was minimally incurred."

*F. Judge Grendell reissued his orders*

*after the current version of R.C. 319.16 took effect*

{¶ 30} In April 2021, after the current version of R.C. 319.16 had taken effect, Judge Grendell informed Walder that current law requires an auditor who questions the validity of an expenditure to "issue the warrant under protest" and to "notify the auditor of state of the protest." Judge Grendell also issued new orders regarding the contested expenditures and resubmitted the documents that he had previously sent to Walder. Walder told Judge Grendell that the expenditures remained improper notwithstanding the current version of R.C. 319.16, noting that the expenditures arose before the amendment to the statute took effect.

## III. Analysis

*A. Whether this case presents a separation-of-powers problem*

{¶ 31} Judge Grendell and his amici curiae argue that Walder's refusal to issue warrants for payment of the requested expenditures violates the separation-of-powers doctrine by impeding the Geauga courts' operations.[1] It is true that "[c]ommon pleas courts and their divisions have inherent power to order funding that is reasonable and necessary to the courts' administration of their business." *State ex rel. Maloney v. Sherlock*, 100 Ohio St.3d 77, 2003-Ohio-5058, 796 N.E.2d 897, ¶ 25. But when, as here, a statutory process exists for resolving a funding dispute, a court must abide by that process unless the process itself suffers from a constitutional defect. *See State ex rel. O'Diam v. Greene Cty. Bd. of Commrs.*, 161 Ohio St.3d 242, 2020-Ohio-3503, 162 N.E.3d 740, ¶ 26 ("before getting to the question of the scope of a court's inherent authority, one would first have to establish that the statutory scheme is unsound").

---

1. Amici curiae suggest that Walder has also deprived Judge Grendell of his due-process rights. We do not reach this question, given the general rule that an amicus curiae may not raise an issue not raised by the parties. *See Wellington v. Mahoning Cty. Bd. of Elections*, 117 Ohio St.3d 143, 2008-Ohio-554, 882 N.E.2d 420, ¶ 53.

**{¶ 32}** The latter principle defeats Judge Grendell's separation-of-powers argument, because he has failed to identify any constitutional defect with R.C. 319.16.

### B. Whether the current or former version of R.C. 319.16 applies

**{¶ 33}** Former R.C. 319.16 was in effect when Judge Grendell submitted his initial orders to Walder and filed his mandamus complaint in this case. But Judge Grendell submitted new orders to Walder after the current version of R.C. 319.16 took effect. Thus, before addressing the elements of Judge Grendell's mandamus action, we must first decide which version of R.C. 319.16 applies.

**{¶ 34}** The current version of R.C. 319.16 may not be applied retrospectively, because the General Assembly did not clearly state that it applied retrospectively. *See State v. LaSalle*, 96 Ohio St.3d 178, 2002-Ohio-4009, 772 N.E.2d 1172, ¶ 14; *see also* R.C. 1.48 ("A statute is presumed to be prospective in its operation unless expressly made retrospective"). Judge Grendell maintains, however, that the current version of R.C. 319.16 may still be applied in this case and that doing so would constitute prospective application of the statute.

**{¶ 35}** In support of that argument, Judge Grendell points to this court's decision in *EPI of Cleveland, Inc. v. Limbach*, 42 Ohio St.3d 103, 537 N.E.2d 651 (1989). In that case, we determined that the tax commissioner had to apply an amended sales-tax law that took effect after a hearing had been held on the taxpayer's petition for reassessment but before the tax commissioner issued her decision in the matter. *Id.* at 106-107. Observing that " '[l]aws of a remedial nature providing rules of practice, courses of procedure, or methods of review are applicable to any proceedings conducted after the adoption of such laws,' " *id.* at 105, quoting *State ex rel. Holdridge v. Indus. Comm.*, 11 Ohio St.2d 175, 228 N.E.2d 621 (1967), paragraph one of the syllabus, we concluded that the amendment to the sales-tax law was remedial in nature due to its procedural

character, which broadened the ways that a taxpayer could disprove liability by allowing for the presentation of additional evidence, *id.* at 106-107.

{¶ 36} Judge Grendell maintains that, like the statutory amendments at issue in *EPI of Cleveland*, the amendments to R.C. 319.16 effected procedural changes that justify their application here. We agree, because the current statute bears on the procedures that apply to courts and county auditors vis-à-vis warrant requests. The addition of division (A)(2) to the statute broadens the means by which a judge may obtain a warrant. And the addition of division (D) modifies the means by which an auditor may question an expenditure, providing that he or she may raise a question under protest, with the caveat that he or she must then issue the warrant but bears no liability relating to it. *Id.*

{¶ 37} Walder has not presented a persuasive argument in response. He argues that former R.C. 319.16 should apply because the current version of R.C. 319.16 lacks language authorizing its retrospective application. But Judge Grendell does not argue that the current version of R.C. 319.16 contains language making it retrospective, and *EPI of Cleveland*, which Walder ignores, illustrates that the lack of such language alone is not a sufficient reason for refusing to apply the current version of R.C. 319.16 in this case. And although it is true that the contested expenditures arose while former R.C. 319.16 was in effect, Walder does not meaningfully contest the expenditures' status as antecedent facts that this court may recognize in applying the current version of R.C. 319.16. *See EPI of Cleveland* at 106, quoting *United Eng. & Foundry Co. Bowers*, 171 Ohio St. 279, 169 N.E.2d 697 (1960) (" 'a statute is not retroactive merely because it draws on antecedent facts for a criterion in its operation' ").

{¶ 38} Walder also asserts that we may not consider Judge Grendell's April 2021 orders, because they arose after he filed his complaint. But this assertion lacks any supporting authority and is at odds with the precept that "we must 'consider the facts and conditions at the time we determine whether to grant the writ.' " *See State*

*ex rel. Williams-Byers v. S. Euclid*, 163 Ohio St.3d 478, 2020-Ohio-5534, 171 N.E.3d 264, ¶ 31 (considering the effect of a city council's appropriation that arose after the relator filed her complaint), quoting *State ex rel. Wilke v. Hamilton Cty. Bd. of Commrs.*, 90 Ohio St.3d 55, 64, 734 N.E.2d 811 (2000).

{¶ 39} In summary, we conclude that the current version of R.C. 319.16 applies here.

### C. The mandamus standard

{¶ 40} To be entitled to extraordinary relief in mandamus, the relator must ordinarily establish (1) a clear legal right to the relief requested, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate legal remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. But because current R.C. 319.16(D) authorizes a mandamus action under these circumstances, we do not consider whether Judge Grendell lacks an adequate remedy in the ordinary course of the law. *See State ex rel. Xenia v. Greene Cty. Bd. of Commrs.*, 160 Ohio St.3d 495, 2020-Ohio-3423, 159 N.E.3d 262, ¶ 7.

### 1. Robocalls and newspaper advertisements

{¶ 41} Judge Grendell argues that he is entitled to a writ of mandamus ordering Walder to issue warrants for payment regarding the phone calls and newspaper advertisements, stressing that R.C. 2303.201(E)(1) vests him with the authority to seek payment for projects that apprise the community of court-related information prompted by the COVID-19 pandemic.

{¶ 42} R.C. 2303.201(E)(1) empowers a court of common pleas to "acquire and pay for special projects of the court, including, but not limited to * * * community service programs * * * and other related services." To this end, "the court may charge a fee" that is "in addition to all other court costs." *Id.* The moneys collected "shall be paid to the county treasurer for deposit into either a general special projects fund or a fund established for a specific special project" and,

subject to conditions not at issue here, "shall be disbursed upon an order of the court." *Id.*

{¶ 43} The evidence establishes that Judge Grendell had TRZ place the robocalls to communicate to Geauga County residents how the pandemic had affected the courts' operations. And he had Chagrin Valley Printing and the Karlovec Media Group place the newspaper advertisements to communicate information to the residents about the Good Deeds Program, which, because of the pandemic, could no longer offer in-person meetings. We hold that because these communications were rendered as a service to the community, prompted in response to the onset of the pandemic, they fall within the meaning of a community-service program under R.C. 2303.201(E).

{¶ 44} The question we must decide, then, is whether Walder had a clear legal duty to issue the warrants after Judge Grendell had issued his orders. Under R.C. 319.16(A)(2), the county auditor "shall issue warrants" when presented with a "proper court order." The word "shall" denotes something that is mandatory, such as a duty. *See State ex rel. Howard v. Turner*, 156 Ohio St.3d 285, 2019-Ohio-759, 125 N.E.3d 875, ¶ 6. Although the statute does not define the features of a "proper court order," the ordinary meaning of the phrase is a court order that is "[a]ppropriate, suitable, right, fit, or correct; according to the rules." *Black's Law Dictionary* at 1470 (defining "proper"). Applying this meaning, Judge Grendell's orders seeking warrants for payment regarding the robocalls and newspaper advertisements were "proper" because they were appropriate under R.C. 2303.201(E). We therefore conclude that Judge Grendell's claim for these expenses is "valid," R.C. 319.16(D), and we issue a writ of mandamus directing Walder to issue warrants for these expenses.

{¶ 45} Walder counters that Judge Grendell lacked authority to issue the contested orders and failed to establish that they were for a public purpose. These alleged defects stem from Walder's belief that Judge Grendell tainted the content

of the robocalls and newspaper advertisements by claiming that no tax dollars were used to pay for them. We reject these arguments.

{¶ 46} Judge Grendell's authority is plain from the terms of R.C. 2303.201(E)(1), which empowers a "court" to issue an "order" requesting a "disburse[ment]" of "moneys" in connection with a special project. Because those terms bear directly on the question presented, we need not engraft a public-purpose requirement onto the statute. *See Estate of Graves v. Circleville*, 124 Ohio St.3d 339, 2010-Ohio-168, 922 N.E.2d 201, ¶ 23.

{¶ 47} Walder's argument that the court's communications to the residents were false and misleading also falters. To begin, R.C. 319.16 does not empower Walder to withhold a warrant based on his evaluation of the truth or falsity of a court's communication. Rather, it grants him "limited statutory authority," *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 474-475, 692 N.E.2d 198 (1998), to "question[] the validity of an expenditure," R.C. 319.16(D). And despite his having exercised that authority, Walder nevertheless bore a mandatory obligation to "issue the warrant under protest." *Id.*

{¶ 48} Further, Walder does not dispute that the special-projects fund is sourced with filing fees, not tax dollars. *See State ex rel. Petroleum Underground Storage Tank Release Comp. Bd. v. Withrow*, 62 Ohio St.3d 111, 113, 579 N.E.2d 705 (1991) ("a fee is not a tax"). Nor does he dispute that Judge Grendell sought warrants to pay the vendors out of the special-projects fund rather than from a fund sourced with tax dollars. Instead, he speculates that Judge Grendell and his staff spent "hours" working on the substance of the communications in the midst of Judge Grendell's campaign. But he cites no evidence to support this assertion.

{¶ 49} Last, we reject Walder's reliance on this court's decisions in *State ex rel. Krabach v. Ferguson*, 46 Ohio St.2d 168, 346 N.E.2d 681 (1976), and *State ex rel. Duffy v. Ferguson*, 132 Ohio St. 524, 9 N.E.2d 290 (1937). Those cases

14

involved the state auditor, not a county auditor, and thus did not turn on the meaning of the current version of R.C. 319.16. *Krabach* at 168-169; *Duffy* at 524-525.

{¶ 50} Judge Grendell is entitled to a writ of mandamus compelling Walder to issue warrants for payment regarding the robocalls and newspaper advertisements.

### 2. Website upgrades

{¶ 51} Judge Grendell argues that he is entitled to a writ of mandamus ordering Walder to issue warrants for payment regarding the website upgrades, stressing that the upgrades were made in furtherance of computerizing the Geauga courts as authorized by R.C. 2101.162 (probate courts) and 2151.541 (juvenile courts).

{¶ 52} R.C. 2151.541 provides that when a juvenile-court judge determines that "additional funds are required to computerize the court," the judge shall direct the clerk of the court to impose a filing fee that is payable to the county treasurer. R.C. 2151.541(A)(1)(b) and (A)(2). Subject to conditions not at issue here, the moneys shall be disbursed "upon an order of the juvenile judge." R.C. 2151.541(A)(1)(b). R.C. 2101.162 has similar wording but it applies to probate courts. *See* R.C. 2101.162(A)(1) and (2).

{¶ 53} There is no dispute that Company 119's website-design services were used to put information relating to the Geauga courts into a computer-usable format. *See Merriam-Webster's Collegiate Dictionary* 256 (11th Ed.2020) ("computerize" means to "put in a form that a computer can use"). It follows, then, that Judge Grendell's orders seeking a warrant for payment of the expenses out of the computerization funds created by R.C. 2101.162 and 2151.541 were proper because the payments are appropriate under those statutes. Judge Grendell has thus established that Walder bore a clear legal duty to issue the warrants under R.C. 319.16(A). We therefore conclude that Judge Grendell's claim for these expenses

is "valid," R.C. 319.16(D), and we issue a writ of mandamus directing Walder to issue warrants for the expenses.

{¶ 54} Walder counters that the writ should be denied because Judge Grendell's orders lacked proper certification under R.C. 5705.41(D)(1), which provides that no subdivision or taxing unit shall

> make any contract or give any order involving the expenditure of money unless there is attached thereto a certificate of the fiscal officer of the subdivision that the amount required to meet the obligation or, in the case of a continuing contract to be performed in whole or in part in an ensuing fiscal year, the amount required to meet the obligation in the fiscal year in which the contract is made, has been lawfully appropriated for such purpose and is in the treasury or in process of collection to the credit of an appropriate fund free from any previous encumbrances. * * * Every such contract made without such a certificate shall be void, and no warrant shall be issued in payment of any amount due thereon.

" 'The purpose in requiring such certificate to be made and in prohibiting public officials entering into any such contracts unless such certificate is first made is clearly to prevent fraud and the reckless expenditure of public funds, but particularly to preclude the creation of any valid obligation against the county above or beyond the fund previously provided and at hand for such purpose.' " *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, 875 N.E.2d 561, ¶ 49, quoting *State v. Kuhner*, 107 Ohio St. 406, 413, 140 N.E. 344 (1923).

{¶ 55} To prevail on this argument, Walder must show that R.C. 5705.41 applies to the courts of common pleas and their divisions—that is, he must show

that the Geauga courts meet the definition of a "subdivision" or a "taxing unit." The Revised Code defines a "taxing unit" as "any subdivision or other governmental district having authority to levy taxes on the property in the district or issue bonds that constitute a charge against the property of the district, including conservancy districts, metropolitan park districts, sanitary districts, road districts, and other districts." R.C. 5705.01(H).

{¶ 56} Walder does not identify any law that authorizes a court to levy taxes or issue bonds. And his argument that the Geauga courts constitute a taxing unit because they receive county taxes falters because the statute does not designate a *recipient* of county taxes as a taxing unit. Walder also points to R.C. 2746.05 (authorizing a juvenile court to "tax as costs" certain categories of fees and costs) and 2746.06 (authorizing a probate court to "tax as costs" certain categories of fees and costs), which, in his view, confer authority on the juvenile and probate courts, respectively, to levy taxes. But these statutes simply refer to the "process of fixing the amount of litigation-related expenses that a prevailing party is entitled to be awarded." *Black's Law Dictionary* at 1762 (defining "taxation of costs").

{¶ 57} Turning to the word "subdivision" in this context, the Revised Code defines it as

> any county; municipal corporation; township; township police district; joint police district; township fire district; joint fire district; joint ambulance district; joint emergency medical services district; fire and ambulance district; joint recreation district; township waste disposal district; township road district; community college district; technical college district; detention facility district; a district organized under section 2151.65 of the Revised Code; a combined district organized under sections 2152.41 and 2151.65 of the Revised Code; a joint-county alcohol, drug addiction, and mental

health service district; a drainage improvement district created under section 6131.52 of the Revised Code; a lake facilities authority created under Chapter 353. of the Revised Code; a union cemetery district; a county school financing district; a city, local, exempted village, cooperative education, or joint vocational school district; or a regional student education district created under section 3313.83 of the Revised Code.

R.C. 5705.01(A).

{¶ 58} Walder ignores this provision altogether.  Because he fails to develop an argument establishing that the Geauga courts meet the definition of a subdivision, we cannot conclude that R.C. 5705.41(D)(1) applies here.  *See Mason City School Dist. Bd. of Edn. v. Warren Cty. Bd. of Revision*, 138 Ohio St.3d 153, 2014-Ohio-104, 4 N.E.3d 1027, ¶ 38 (collecting cases).  Nor is it obvious how this provision could apply to the Geauga courts, because the definition does not refer to any court.  The General Assembly is capable of making such a reference when it wants to.  *See, e.g.*, R.C. 2101.01 et seq. (laws applicable to probate courts); R.C. 2151.07 et seq. (laws applicable to juvenile courts).

{¶ 59} Finally, Walder makes a passing argument that Geauga County's automatic data processing board would need to approve the Geauga courts' use of Company 119's services.  Walder fails to put forth any meaningful statutory analysis to support this argument.  *See Mason City School Dist. Bd. of Edn.* at ¶ 38.

{¶ 60} Judge Grendell is entitled to a writ of mandamus compelling Walder to issue warrants for payment regarding the website upgrades.

### *3. Mileage reimbursements*

{¶ 61} Judge Grendell argues that he is entitled to a writ of mandamus ordering Walder to issue warrants for payment of the mileage reimbursements sought by Laurie.  Unlike the categories of expenses addressed above, Judge

Grendell does not point to a statute authorizing him to seek reimbursement for this class of expenses. Instead, he refers us to the Geauga courts' travel-expense-reimbursement policy. Amended in 2006, the policy provides: "Mileage reimbursement claims must be made out on the approved reimbursement form. Completed mileage reimbursement requests must be reviewed and approved by the employee's supervisor before they are submitted for payment." Laurie elaborates on this policy in her affidavit, explaining that "[a]ll employees of the Court are entitled to reimbursement for mileage incurred for court-related travel so long as the reimbursement is approved by me (the Court Administrator), or in the case of my mileage, by Judge Grendell."

{¶ 62} Walder does not dispute that the Geauga courts may adopt a travel-expense policy or that Laurie's reimbursement requests fall within the terms of that policy. Instead, he points to former R.C. 319.16, claiming that it vests him with the authority to seek "evidentiary matter" to enable him to determine the propriety of a request. But as noted above, this case is controlled by the current version of R.C. 319.16, and division (A)(2) of that statute does not refer to additional evidentiary matter.

{¶ 63} Walder next argues that Laurie's reimbursement requests relating to her after-work commutes depart from "IRS standards." Walder's legal analysis in support of that argument is wanting. He cites a federal tax-court decision, *Saunders v. Commr. of Internal Revenue*, T.C. Memo 2012-200, 2012 WL 2912756 (July 17, 2012), without offering any analysis of it. He then cites a publication called "The TaxBook," which he claims is a tax-related research resource, but he does not identify the text of the Internal Revenue Service standard that he claims binds his review of Laurie's request. Moreover, he fails to explain why the principles discussed in the federal tax-court decision and "The TaxBook," which address *deductions* for travel-related tax purposes, apply to *reimbursements* such as

Laurie's. If there is a reason for treating the one as the functional equivalent of the other, Walder has failed to say what that reason is.

{¶ 64} In summary, Judge Grendell has shown that his mileage-reimbursement orders were appropriate in light of the Geauga courts' travel-expense-reimbursement policy, making them proper court orders under R.C. 319.16(A)(2). We therefore hold that Judge Grendell's claim is valid under R.C. 319.16(D), and we issue a writ of mandamus ordering Walder to issue warrants for payment of Laurie's mileage reimbursements.

### *4. Publication fees*

{¶ 65} Last, Judge Grendell argues that he is entitled to a warrant for payment of $61.95 in publication fees for legal notices in a pending juvenile case. As support, Judge Grendell cites Juv.R. 16, which specifies when "[s]ervice by publication shall be made by newspaper publication."

{¶ 66} The point in contention here is quite narrow. Walder does not dispute, as a general matter, Judge Grendell's authority to seek warrants for this type of expense. Nor does he dispute Judge Grendell's assertion that this expense was necessary to adjudicate the pending juvenile case or that "there are times when the publications are initially paid for by the court and then reimbursed by case parties at a later date."

{¶ 67} Instead, Walder alleges that Judge Grendell failed to comply with R.C. 5705.41(D)(1), pointing to the fact that the notice, which was published on December 17, 2018, preceded the certificate of encumbrance, which was dated January 2, 2019. In Walder's view, R.C. 5705.41(D)(1) requires Judge Grendell to either match the transaction to an encumbrance opened on or before December 17, 2018, or to open what he calls a "then-and-now encumbrance." *See State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, 165 Ohio St.3d 292, 2021-Ohio-2374, 178 N.E.3d 492, ¶ 4, fn. 1 (describing a "then and now certificate").

**{¶ 68}** As noted above, Walder has not shown that the Geauga courts fall within the meaning of a "subdivision or taxing unit" as that phrase is used in R.C. 5705.41(D)(1). Walder's argument that he could not issue a warrant due to Judge Grendell's alleged noncompliance with R.C. 5705.41(D)(1) therefore fails. Because Walder does not otherwise question the propriety of Judge Grendell's order, we conclude that Judge Grendell has presented a valid claim under R.C. 319.16(D) and that he is entitled to a writ of mandamus ordering Walder to issue a warrant for payment of the publication-fee expense.

*D. Judge Grendell's motion for leave to file a supplemental affidavit*

**{¶ 69}** Judge Grendell has filed an unopposed motion for leave to file a supplemental affidavit for the purpose of clarifying that in 2013, he increased the special-projects fee for both the probate court and the juvenile court from $15 to $30 and that in 2015, he increased the special-projects fee for the probate court by $25 to $50 (depending on the filing). We grant the motion because the addition of this new information will neither delay this proceeding nor prejudice Walder. *See State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 144 Ohio St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229, ¶ 14.

### IV. Conclusion

**{¶ 70}** For the foregoing reasons, we grant a writ of mandamus ordering Walder to issue warrants for payment of the contested expenditures, and we grant Judge Grendell's motion for leave to file a supplemental affidavit.

Writ granted.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Roetzel & Andress, L.P.A., Stephen W. Funk, and Emily K. Anglewicz, for relator.

Mazanec, Raskin & Ryder Co., L.P.A., Frank H. Scialdone, and Todd M. Raskin, for respondent.

Linn & Grendell, and James Grendell, urging granting of the writ for amici curiae TRZ Business Services and Michael Wagner.

Paul W. Flowers Co., L.P.A., Louis E. Grube, and Paul W. Flowers, urging granting of the writ for amici curiae Ohio Association of Probate Judges and Ohio Association of Juvenile Court Judges.

_____